NO. 07-03-0285-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 4, 2003


______________________________



FLOYD HARDEMAN
,




 Appellant


v.



REGIONAL ISLAMIC CHAPLAIN TALIB, ET AL., 




 Appellee

_________________________________



FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;



NO. 48,263-C; HON. PATRICK A. PIRTLE, PRESIDING


_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 Floyd Hardeman (Hardeman) appeals from an order dismissing his lawsuit against
Regional Islamic Chaplain Talib, Senior Islamic Chaplain Shabazz, Senior Warden of
Clements Unit Keith Price (individually and in his official capacity), Regional Director John
Gilbert (individually and in his official capacity), Director Gary Johnson (individually and
in his official capacity), Chairman of the Texas Department of Criminal Justice Allan
Polunsky (individually and in his official capacity), and Clements Unit Senior Chaplain
Murphy Rory (individually and in his official capacity). We dismiss the appeal for lack of
jurisdiction. 

 On May 8, 2000, and July 24, 2000, the trial court signed separate orders
dismissing Hardeman's suit against all of the defendants. He subsequently filed a notice
of appeal on February 13, 2003, wherein he asserted that he was appealing from a
dismissal order signed on or about January 24, 2003. The clerk's record before us does
not reflect the order mentioned in the notice exists. Thus, we contacted Hardeman, via
letter dated August 11, 2003, and advised him of this situation. We also directed him to
inform us of why we had jurisdiction over his appeal, which response was due no later than
August 21, 2003. To date, a response has not been received.

 To be timely and depending upon various circumstances, a notice of appeal must
be filed within 30 or 90 days after a final order disposing of the case is signed. Tex. R.
App. P. 26.1(a). Here, approximately two and one-half years lapsed between the dates on
which the trial court signed the dismissal orders disposing of the case and the date on
which the notice of appeal was filed. Because a timely notice of appeal is essential to
invoke our appellate jurisdiction, In re A.L.B., 56 S.W.3d 651, 652 (Tex. App.--Waco 2003,
no pet.), and Hardeman did not file one, we cannot but dismiss the appeal. Id. 

 Accordingly, the appeal is dismissed for want of jurisdiction. 


 Per Curiam 

 



al', sans-serif">                                       ______________________________

SHARON BOULWARE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 217TH DISTRICT COURT OF ANGELINA COUNTY;

NO. CR-22215; HONORABLE DAVID V. WILSON, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant, Sharon Boulware, was convicted of two counts of intentionally and
knowingly causing serious bodily injury to an elderly individual. A jury assessed
punishment at confinement in the Institutional Division of the Texas Department of Criminal
Justice for a period of ten years for Count I and eight years for Count II. Appellant, through
two issues, contends the trial court committed reversible error by denying two challenges
for cause during voir dire and that the evidence is factually and legally insufficient. We
affirm.
Factual And Procedural Background
          Appellant owned and operated a home for elderly persons in Angelina County,
Texas. The facility was not licensed by the State. In 1999, two of the residents of
appellant’s facility were moved under circumstances that raised concerns of insufficient
medical attention and lack of proper care and nutrition. Ultimately, appellant was indicted
in a two count indictment for injury to an elderly individual. 
          In Count I of the indictment, the State was required to prove that appellant
intentionally or knowingly, by omission, caused serious bodily injury to Raymond Davis, an
elderly person, by failing to provide adequate nutrition and by failing to provide medical
attention. In Count II, the allegations were the same, except that the victim was Jewell
Russell and the act was in failing to provide adequate medical attention. 
          During the trial, the State produced evidence that Raymond Davis, the elderly
person named in Count I of the indictment, began living in the Boulware home in
September 1999. At the time Mr. Davis entered the Boulware home, he was suffering from
dementia and had possibly suffered a mini-stroke. Davis’ son, Gaylon, testified that his
father was eating well when he entered the home and that he was on a couple of
medications. When Gaylon first met appellant, there was no mention that appellant’s
home was simply a “boarding house.” Gaylon further testified that, in October of 1999, he
took his father to see Dr. Krohn. At the time of this visit, Mr. Davis had lost ten pounds. 
On November 29, 1999, Gaylon received a phone call from appellant stating that an
ambulance was picking his father up and that Mr. Davis was probably not going to live. 
Upon arriving at the hospital, Gaylon observed that his father was incoherent and non-responsive. Mr. Davis died shortly after getting to the hospital. Gaylon further stated that
during the three months his father lived at the Boulware house, appellant never voiced any
concern over being able to provide Mr. Davis proper care. 
          Dr. Krohn testified that he had been Mr. Davis’s physician for a little over a year. 
Dr. Krohn testified that, when he observed Mr. Davis at the emergency room, he found Mr.
Davis to be totally unresponsive and breathing very rapidly. Dr. Krohn also testified that,
upon arrival at the hospital, Mr. Davis weighed 97.9 pounds and that this amounted to a
23 pound weight loss over a 30 day period. Tests run on Mr. Davis while in the emergency
room showed him to be suffering from acidosis, an empty bladder, and non-functioning
kidneys. The doctor further testified that Mr. Davis’s skin was “tenting” which was a sign
of dehydration. Further, at the time of admission to the emergency room, Mr. Davis was
suffering from septic shock, meaning he had an ongoing infection within his body. All of
the test results and observations led the doctor to believe that Mr. Davis’s acute medical
conditions had been present for several days. The record reveals that the doctor, at the
request of the family, did not attempt any “heroic” measures to prolong Mr. Davis’s life. 
However, the doctor did state that he was not sure if they could have saved Mr. Davis’s life
even had they attempted heroic measures. 
          In Count II of the indictment, the evidence showed that the elderly victim, Jewell
Russell, entered the Boulware facility in May of 1999. At the time Mrs. Russell came to the
facility, she was not ambulatory and required feeding by a third person. Mrs. Russell was
required to take three prescriptions a day and was suffering dementia. Hayden Russell,
her son, testified that at the time his mother was placed at the Boulware facility, it was his
understanding that appellant would provide lodging, food, and oversight of Mrs. Russell’s
medical condition, specifically including administering of her medications. 
          In December 1999, Hayden testified, he observed his mother’s condition to have
worsened significantly. As a result of his concern, Hayden and his father agreed to transfer
his mother to a nursing home in San Augustine. Mrs. Russell was taken to the nursing
home in San Augustine; however, upon arrival, nurses examined Mrs. Russell and, as a
result of the nurses’ observations, she was immediately transferred to the hospital in San
Augustine. Mrs. Russell was subsequently sent to the hospital in Lufkin. 
          Mrs. Russell’s treating physician in Lufkin, Dr. Russell, testified as to her condition
upon arrival at the emergency room in Lufkin, including skin ulcers that required surgical
intervention.


 The doctor further testified that, although the skin ulcers themselves would
not cause a significant risk of death, left untreated there was a significant chance of
infection that could result in death.
            Also testifying about Mrs. Russell’s condition on the day she left the Boulware
facility was Angie McGowan. McGowan is a registered nurse who was working at the
Colonial Pines Health Care, the nursing home to which Mrs. Russell was originally
transferred. McGowan had an opportunity to observe Mrs. Russell the day she was
brought to the nursing home and discovered a skin ulcer the size of McGowan’s fist over
Mrs. Russell’s sacrum that went to the bone. At the time the ulcer was discovered, there
was no bandaging covering the area. Mrs. Russell also had several other skin ulcers, one
of which also went all the way to the bone. None of these ulcers were covered with
bandages. Additionally, McGowan testified that Mrs. Russell appeared to be
malnourished. McGowan further stated that, as a result of Mrs. Russell’s condition, she
could not be admitted to the nursing home but had to be sent to the hospital in San
Augustine. McGowan further testified that she reported Mrs. Russell’s condition to the
Texas Department of Health. After McGowan had occasion to report the incident to the
State, appellant called to the nursing home very upset that the matter had been reported
to the State. According to McGowan, appellant threatened her during the conversation.
           Also testifying for the State was Becky Adams who was, at the time Mrs. Russell
was admitted to the hospital in Lufkin, a social worker at Lufkin Memorial Hospital. She
testified as to her training and experience in detecting signs of abuse. Following the
testimony concerning her training, Adams stated that, on the day of Mrs. Russell’s
admission to the hospital in Lufkin, she noticed a foul odor which Adams attributed to a
lack of personal cleanliness. Adams also testified that Mrs. Russell had bed sores and a
dirty catheter. Adams opined that the general state of cleanliness, both as to Mrs. Russell
personally and her catheter, are red flags for an abusive situation. The day following Mrs.
Russell’s admission to the Lufkin hospital, Adams had the opportunity to visit with appellant
about Mrs. Russell’s care. According to Adams, appellant became very upset and
appeared to be upset that Adams was questioning her care of Mrs. Russell. This, based
upon her experience as a social worker in the health care area, was very unusual. 
          Pat Beaugh, a retired Texas Department Human Services employee, testified about
her role as a “surveyor” of nursing homes, both licensed and unlicensed. Beaugh pointed
out that she only went to unlicensed homes on the basis of complaints and that all visits
were unannounced. Beaugh stated that she conducted a visit of appellant’s facility in
December 1999. The complaints were of abuse from neglect and about food fed to the
residents. During the visit, Beaugh noticed that some of the residents required medical
attention that they had not apparently been receiving. Beaugh testified that she observed
one resident with a feeding tube that was unsanitary and appeared to be crusted over. 
She also observed another patient with a catheter that appeared to be crusted over. 
Beaugh’s observations prompted a second visit. When asked whether or not any of the
conditions she observed at the December visit could, in her opinion, have been caused by
a failure to provide medical attention, Beaugh answered affirmatively. Beaugh also
testified that some the conditions she observed in the residents were caused by a failure
to provide proper nutrition. When Beaugh went back for a third visit, all of the residents of
appellant’s facility had been moved. As to Mrs. Russell, Beaugh had the opportunity to
review her medical records at both the San Augustine nursing home and the hospital in
Lufkin, which revealed injuries and conditions that, in Beaugh’s opinion, created a
substantial risk of death for Mrs. Russell. Further, Beaugh stated that these conditions
were as a result of failure to provide medical attention to Mrs. Russell.
          Appellant presented evidence that there were home health providers that visited her
facility and provided care to residents. However, Patricia Jones, the director of a
community based care program, could not testify with any certainty that her agency
provided services for either of the two elderly residents listed on the indictment. Another
witness for appellant, Glenda Havard, testified that in 1999 she was involved in home
health care and had been to appellant’s facility. At the time Havard was present, the facility
appeared clean. However, the resident that received treatment from Havard was not one
of the residents listed on either count of the indictment. Appellant testified that she did not
intend, nor promise to give, medical attention to her residents. Appellant’s position
throughout the trial was that she ran a boarding house only. Appellant was convicted of
both counts and sentenced by the jury. Appellant now challenges her conviction on two
grounds.
Voir Dire Challenges
           First, appellant contends that the trial court erred in denying challenges for cause
as to two prospective jurors. During the voir dire process, appellant became concerned
that two of the prospective jurors could not be fair. Prospective juror Lampkin voiced some
concern about being able to be fair in a case involving an elderly victim. Prospective juror
Brown indicated that one of the treating physicians, who was scheduled to testify, was his
family doctor and that the prospective juror would believe the doctor. At the close of
general voir dire, appellant challenged each of the above mentioned prospective jurors for
cause. The trial court denied the challenges. 
          Appellant contends that the trial court committed reversible error when the court
overruled appellant’s challenges for cause as to prospective jurors Brown and Lampkin. 
In order to preserve a challenge for cause, the appellant must demonstrate that there was
a clear and specific challenge made known to the trial court. Feldman v. State, 71 S.W.3d
738, 744 (Tex.Crim.App. 2002). In the case at bar, appellant simply stated, after voir dire
had been completed, that he challenged jurors number 26 and 32. He then stated their
names. At no time during this colloquy did appellant state the reason that the prospective
jurors were challengeable. During appellant’s voir dire, each of those jurors were
questioned about issues connected with the case and, in each case, the prospective juror
either requested the court to be excused as a juror in this matter or made a statement that
they personally did not feel they were an appropriate juror for this case. Neither of these
statements are a challenge for cause nor do they inform the court the basis for appellant’s
challenge. Id. As such, nothing is preserved for appeal. Appellant’s first issue is
overruled. 
Sufficiency of the Evidence
          Appellant next contends that the evidence was not legally nor factually sufficient to
sustain the conviction. When both legal and factual sufficiency are attacked, we must first
address the issue of legal sufficiency. See Clewis v. State, 922 S.W.2d 126, 133
(Tex.Crim.App. 1996). If the evidence is legally sufficient, we then review the factual
sufficiency challenge. See id. In assessing the legal sufficiency of the evidence, we review
all the evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross
v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency
review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury’s
verdict unless it is irrational or unsupported by more than a mere modicum of evidence. 
Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).
          When an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the evidence in a
neutral light, the jury was rationally justified in finding the appellant guilty beyond a
reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In
performing a factual sufficiency review, we must give deference to the fact finder’s
determinations if supported by evidence and may not order a new trial simply because we
may disagree with the verdict. See id. at 417. As an appellate court, we are not justified
in ordering a new trial unless there is some objective basis in the record demonstrating that
the great weight and preponderance of the evidence contradicts the jury’s verdict. See id. 
Additionally, an appellate opinion addressing factual sufficiency must include a discussion
of the most important evidence that appellant claims undermines the jury’s verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).
          The indictment alleges, in two counts, that appellant intentionally or knowingly by
omission caused serious bodily injury to an individual 65 years of age or older by the failure
to perform certain acts specified in each count.


 See Tex. Penal Code Ann. § 22.04(a)
(Vernon Supp. 2007). Injury to an elderly person is a result oriented offense. See
Johnston v. State, 150 S.W.3d 630, 634 (Tex.App.–Austin 2004, no pet.)(citing Alvarado
v. State, 704 S.W.2d 36, 39 (Tex.Crim.App. 1985)). Thus, the State had to prove both that
appellant intentionally or knowingly failed to provide medical care or nutrition, and that she
intentionally or knowingly caused the injury. Id. A person acts intentionally when “it is his
conscious desire to engage in the conduct or cause the result.” § 6.03(a). A person acts
knowingly with respect to a result of his conduct when “he is aware that his conduct is
reasonably certain to cause a result.” § 6.03(b). In a sufficiency review, the jury’s inference
of intent is afforded more deference than the evidence supporting proof of conduct. 
Connell v. State, 233 S.W.3d 460, 466 (Tex.App.–Fort Worth 2007, no pet.) (citing
Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000)). Stated differently, if the
record supports conflicting inferences regarding appellant’s intent or knowledge, we must
presume that the trier of fact resolved any such conflict in favor of the prosecution, and we
must defer to that resolution. Couchman v. State, 3 S.W.3d 155, 163 (Tex.App.–Fort
Worth 1999, pet. ref’d) Additionally, it is not necessary that each fact point directly and
independently to the guilt as long as the cumulative force of all the incriminating
circumstances is sufficient to support the conviction. Hooper v. State, 214 S.W.3d 9, 13
(Tex.Crim.App. 2007). Circumstantial evidence is as probative as direct evidence in
establishing the guilt of a person, and circumstantial evidence alone is sufficient to
establish guilt. Id.
          Appellant has not directly challenged the implied jury finding that she assumed care,
custody, or control of the elderly residents of her facility. Rather, she has indirectly
challenged this issue by contending that she was just running a boarding house. 
Assuming, for purpose of this appeal, that claiming to only run a boarding house does in
fact challenge the sufficiency of the evidence, both legally and factually, as to the issue of
care, custody, or control, we turn to § 22.04(d) for the definition of care, custody and
control. See Hicks v. State, 241 S.W.3d 543, 546 (Tex.Crim.App. 2007). § 22.04(d)
provides, in relevant part: 
“For purposes of an omission that causes a condition
described by Subsection (a)(1), (2), or (3), the actor has
assumed care, custody, or control if he has by act, words, or
course of conduct acted so as to cause a reasonable person
to conclude that he accepted responsibility for protection, food,
shelter, and medical care for a child, elderly individual, or
disabled individual. . . . “
 
Tex. Penal Code Ann. § 22.04(d) (Vernon 2001).
 
The jury, by its verdict, has impliedly found this issue adversely to appellant. The
evidence, in the form of the testimony from the family of the residents, supports this finding
by the jury. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Furthermore, the
evidence supports the factual sufficiency, because the jury rejected the alternative theory 
of running a boarding house by its verdict. We cannot say that the jury’s decision was in
any form an irrational one. Watson, 204 S.W.3d at 415. 
          In Count I of the indictment referencing Mr. Davis as the elderly victim, the culpable
conduct was failing to provide nutrition and failing to provide medical attention. Appellant’s
contention regarding the sufficiency of the evidence is centered on the issue of intent. 
Specifically, appellant urges that the evidence is both legally and factually insufficient to
show that appellant intended the result, serious bodily injury, or that her omission was
reasonably certain to cause the injuries sustained.
          Once having assumed the care, custody, or control of the individuals, appellant’s
actions must be then measured accordingly. The evidence showed that Mr. Davis entered
the facility ambulatory with dementia in September 1999. By October 1999, when he went
to the doctor, he had lost 10 pounds. On the day the ambulance took him to the hospital,
Mr. Davis was down to 97 pounds. Appellant admitted that Mr. Davis seemed on occasion
not to eat. The doctor noted that when Mr. Davis was seen in the emergency room he was
non-ambulatory and incoherent. Mr. Davis was suffering from a number of serious medical
problems including septic shock, acidosis, renal failure and dehydration. As to the
dehydration, the doctor explained that Mr. Davis’s skin was tenting, meaning that if you
pulled it up it did not have enough elasticity to even go back down. The doctor further
opined that these problems had been ongoing for several days. 
          Appellant’s position seemed to be that she did not purport to provide medical care
and that she only ran a boarding house. However, appellant did accept Mr. Davis into the
facility and thereby assumed some responsibility. When we apply the standards of review
for legal sufficiency, keeping in mind that we must view the evidence in the light most
favorable to the verdict, we cannot say that the jury acted irrationally in finding that
appellant failed to provide nutrition or medical attention after assuming care of Mr. Davis. 
Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. 
          Having determined that the evidence was legally sufficient, we must now review the
factual sufficiency. The evidence reveals that appellant had daily contact with Mr. Davis. 
The record further reflects that Mr. Davis had lost over 30 pounds while living in appellant’s
facility and had gone from an ambulatory patient to a bedridden patient. The doctor’s
testimony reveals that the process that resulted in the death of Mr. Davis did not occur
suddenly, but rather was ongoing for several days. To all of this appellant simply states
that she did not accept Mr. Davis into the facility to provide medical care; however, she did
accept him into the facility and thereby the duty of care, custody or control of Mr. Davis. 
The jury could infer from this record that appellant failed by omission to seek medical
assistance for Mr. Davis even though it was apparent he was in severe medical distress. 
Couchman, 3 S.W.3d at 163. Thus, there is factually sufficient evidence to support the
verdict of the jury and, viewing the evidence in a neutral light, we cannot say that the jury
acted irrationally in finding appellant guilty beyond a reasonable doubt. Watson, 204
S.W.3d at 415. 
          In Count II of the indictment referencing Mrs. Russell as the victim, the culpable
conduct was failing to provide adequate medical attention to her. Appellant’s contention
regarding the evidence is the same as in Count I, that the evidence was not sufficient on
the intent element. Again, appellant has not challenged the fact that by accepting Mrs.
Russell into her facility she has care, custody and control over her. 
          The evidence at trial showed that Mrs. Russell entered the facility in May 1999, 
non-ambulatory, requiring assistance in feeding and taking several medications each day. 
The testimony further revealed that the family of Mrs. Russell believed that appellant was
providing room, board, and would oversee her medical conditions, including administering
of her medication. During most of Mrs. Russell’s stay at the facility, her husband, Dale
Russell was present daily and assisted in feeding her. Mrs. Russell’s son, Hayden,
testified that by December 1999 his mother’s condition had become worse and he
convinced his father to transfer her to a nursing home in San Augustine. Upon arrival at
the nursing home, Mrs. Russell was evaluated by the nursing staff. The nurse who did the
evaluation testified that, upon examining Mrs. Russell, she observed a Stage IV bedsore
on Russell’s back above the sacrum. This sore was about the size of the nurse’s fist and
went to the bone. There were additional sores. None of which were bandaged at the time
Mrs. Russell arrived at the nursing home. The nurse further stated that Mrs. Russell
appeared to be dirty and malnourished when she arrived at the nursing home. As a result
of this finding, Mrs. Russell was transferred to the San Augustine hospital and from there
to the Lufkin Memorial Hospital. 
          Upon arrival at the hospital in Lufkin, Mrs. Russell was treated by Dr. Jeffery
Russell. The doctor opined that the bedsore could not by themselves cause death;
however, if they had been left untreated there was a significant possibility of infection that
could cause death. When first arriving at Lufkin Memorial Hospital, Mrs. Russell was also
observed by Becky Adams. Adams, the social worker at Lufkin Memorial Hospital, testified
that Mrs. Russell’s bedsores emitted a foul odor, that her catheter was dirty and that Mrs.
Russell personally appeared dirty. Adams testified that, based upon her training, the
bedsores, dirty catheter, and lack of personal cleanliness were all red flags for an abuse
by neglect situation. Pat Beaugh, a retired Texas Department of Human Services
employee, testified about visits she made to appellant’s facility in December 1999 and
January 2000 and that the ultimate outcome of her visits was a decision to move all of the
remaining residents out of the facility. 
          Appellant presented the same evidence that she had never held herself out to
provide medical care. In addition, relatives of other patients who had filed no complaints
testified about their observations of the facility and the manner in which it was run. 
          When all of this evidence is viewed in the light most favorable to the verdict, as we
must in a legal sufficiency review, we cannot say the jury was acting irrational when it found
the evidence sufficient to convict beyond a reasonable doubt. Jackson, 443 U.S. at 319;
Ross, 133 S.W.3d at 620. 
          Turning to the issue of factual sufficiency, even when reviewing the evidence in a
neutral light, the jury was rationally justified in finding appellant guilty beyond a reasonable
doubt. Watson, 204 S.W.3d at 415. Mrs. Russell’s bedsores went to the bone and emitted
a foul odor. Her catheter was dirty and Mrs. Russell herself lacked personal cleanliness,
even though appellant assumed care of Mrs. Russell. Appellant relies upon the fact that
she never held herself out as anything but a boarding house and that Mr. Russell was
present nearly every day. These assertions, even if true, do her no good for she had
accepted the resident into her facility. The jury was rationally justified in believing the
testimony that all these conditions were red flags for abuse by neglect. Additionally, the
jury was rationally justified in believing that, even viewing the evidence in a neutral light,
that the severity of Mrs. Russell’s condition indicated a lack of medical attention from
appellant who had assumed the duty of care.
          Having found that the evidence was legally and factually sufficient as to the
allegations contained in both Count I and Count II of the indictment, we overrule appellant’s
second issue.
Conclusion
          Inasmuch as we have overruled both of appellant’s issues, the judgment of the trial
court is affirmed. 
 
                                                                Mackey K. Hancock

                                                                           Justice









Do not publish.