Affirmed and Memorandum Opinion filed November 25, 2003









Affirmed
and Memorandum Opinion filed November 25, 2003.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00086-CR

NO.
14-03-00087-CR

____________

 

LEROY LINSAY SODORFF, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 183rd
District Court

Harris County, Texas

Trial Court Cause Nos. 900,547
& 900,548

 



 

M EM O R A N D U M   O
P I N I O N

A jury found appellant Leroy Linsay
Sodorff guilty of aggravated sexual assault of a
child and indecency with a child.  After
appellant pleaded Atrue@ to an enhancement paragraph
alleging a prior conviction for aggravated sexual assault, the trial court
sentenced appellant to two life sentences to run cumulatively.  In four issues, appellant challenges the
legal and factual sufficiency of the evidence supporting his conviction.  We affirm.

 








 

FACTUAL BACKGROUND

The complainant, A.S., is the biological son of appellant
and Sharon Johnson.  In early 2001, A.S.,
who was then four years old, was living with appellant separately from
Johnson.  Johnson also had an
eight-year-old daughter, K.M., who was removed from Johnson=s custody by Children=s Protective Services (CPS) in
January 2001, because Johnson failed to provide adequate supervision for
her.  On May 18, 2001, after K.M. made an
outcry of sexual abuse against appellant, CPS removed A.S. from appellant=s custody and placed him in
Johnson=s custody.[1]


On June 4, 2001, CPS substitute care worker Stacy Bell
received a referral regarding A.S.  The
referral concerned an allegation that A.S. was sexually acting out with other
children.  Specifically, it was alleged
that A.S. was trying to put his Afront butt@ in their Aback butt,@ and when questioned, A.S.
stated that he learned it from his daddy. 
A.S. was referred to the Children=s Assessment Center (CAC) for
an interview, but when he was interviewed, he stated that he could not tell
what happened because his mother would lose her kids.  

On June 12, 2001, Dr. Margaret McNeese,
the director of the CAC, performed a physical examination on A.S.  Her examination of his genital area revealed
that he had disruption of the stellate pattern of the
anus and scarring indicative of repeated injury over time.  The area of the anus was also discolored,
indicating that blood had Apooled@ there.  The physical findings were consistent with
penetrating anal trauma.  








That same day, A.S. was removed from Johnson=s custody and placed into the foster
home of Maria (Rick) and Jim Barnes.  In
August, while driving home with Rick from a meeting at the CAC, A.S. made an
outcry that appellant Apulled on my talliewacker and stuck
his finger up my butt.@  Later, during a
counseling session with therapist Tim Conley, A.S. disclosed that appellant Arubbed@ and Apulled@ on his Atalliewacker@ and put his finger in his Abuns.@ 


During trial, A.S. testified that he was in his bed, lying on
his back, with his pants pulled down when appellant touched his penis.  A.S. also testified that he then lay on his
stomach and appellant touched his anus. 
After the State rested, appellant testified in his own defense, denying
that he ever engaged in the conduct charged.

ANALYSIS

In his first and third issues, appellant contends the
evidence is legally and factually insufficient to support his conviction for
aggravated sexual assault of a child, because the evidence is insufficient to
show that he caused the penetration of A.S.=s anus.  In his second and fourth issues, appellant
contends the evidence is legally and factually insufficient to support his
conviction for indecency with a child, because the evidence is insufficient to
show that he intended to arouse and gratify his sexual desire by touching the
genitals of the complainant.








The standards for sufficiency reviews are well‑established.  Under a legal sufficiency review, we are to
view the evidence in the light most favorable to the judgment, and determine
whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307,
319 (1979); Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). 
Under a factual sufficiency review, we consider all of the evidence
equally, and do not view the evidence in the light most favorable to the
verdict.  See Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000).  We will set aside a verdict for factual
insufficiency only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Clewis v. State, 922 S.W.2d 126,
129 (Tex. Crim. App. 1996).  We give due deference to the jury=s determinations, particularly those
concerning the weight of the evidence and the credibility of witness
testimony.  See Johnson, 23 S.W.3d
at 7B8.

1.       The Evidence
of Aggravated Sexual Assault

To convict an accused of aggravated sexual assault of a
child, the State must prove that the accused knowingly or intentionally caused
the penetration of the anus or female sexual organ of a child by any
means.  See Tex. Pen. Code ' 22.021(a)(1)(B)(i).  AChild@ is defined as a person under
the age of 17 who is not the spouse of the actor.  See id. '' 22.011(c)(1), 22.021(b).  The indictment charged that appellant caused
penetration by placing his finger in the complainant=s anus.

Our review of the evidence convinces us that the evidence was
both legally and factually sufficient to show that appellant caused the
penetration of A.S.=s anus with his finger. 
A.S. made an outcry to his foster mother, Rick Barnes, that appellant
pulled on his Atalliewacker@ and Astuck his finger up [his] butt.@ 
A.S.=s outcry statement alone can be
sufficient to support a conviction for aggravated sexual assault.  See Kimberlin v.
State, 877 S.W.2d 828, 831 (Tex. App.CFort Worth 1994, pet. ref=d). 
A.S. also told therapist Tim Conley that appellant Arubbed@ and Apulled@ on his Atalliewacker@ and put his finger in his Abuns.@ 
Additionally, A.S.=s testimony was clear and specific that appellant committed
the acts.  He stated that he was laying
on appellant=s bed, and appellant pulled A.S.=s pants down and touched his penis
and anus.  A.S. also indicated on an
anatomically correct doll the areas appellant touched.  This testimony corroborates A.S.=s earlier outcries.  








The medical evidence further reinforces the State=s contention that appellant
penetrated A.S.=s anus with his finger. 
Dr. McNeese testified that the scarring she
observed resulted from repeated injury over time consistent with penetrating
trauma, and that her findings were consistent with sexual abuse.  The manner in which A.S.=s sexual abuse was discovered
provides additional supporting evidence. 
A.S. was found sexually acting out with other children in a closet;
specifically, he was trying to put his Afront butt@ on their Aback butt.@ 
When questioned, A.S. stated that he learned it from appellant.  At trial, Dr. Jennifer Welch, the director of
psychological services and research at the CAC, testified that sex play by
children is a common symptom of sexually abused children.  

Appellant contends, however, that this evidence is legally
and factually insufficient to show that he caused the penetration of A.S.=s anus.  Appellant=s primary argument is that A.S.=s testimony was contradictory and
influenced by the people around him.  Appellant
further suggests that, even before A.S. made his outcry to Rick Barnes, his
foster mother, Stacy Bell influenced Barnes to believe appellant sexually
abused A.S.  Additionally, appellant
points to A.S.=s failure to make any allegations
against him when CPS workers visited his home, either during their
investigation into K.M.=s allegation of sexual abuse against appellant, or when CPS
investigated the referral for A.S.=s sexual acting out with the other
children. 

With regard to A.S.=s testimony, he was clear and direct
in response to the State=s questions.  But, when
cross-examined by the defense, some of his testimony was inconsistent or
confused with regard to his age and place of residence at the time of the
assault, and he was unable to remember details about the assault in response to
the defense=s questions.  However, as a matter of public policy, child
victims are not expected to testify with the same clarity and ability as is
expected of mature and capable adults.  See
Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990); Wallace v. State, 52 S.W.3d 231,
235 (Tex. App.CEl Paso 2001, no pet.).  Additionally, Dr. Welch, who observed A.S.=s testimony, testified that A.S.=s responses while on the witness
stand were consistent with that of victims of sexual abuse.  And, throughout the testimony, A.S.
consistently maintained that appellant touched his penis and his anus.  The testimony of a child victim alone is
sufficient to support a conviction for aggravated sexual assault.  See Garcia v. State, 563 S.W.2d 925,
928 (Tex. Crim. App. 1978). 








Appellant also points to no specific evidence that A.S. was
coached or otherwise influenced to give certain answers by anyone.  And, while there was some dispute whether or
not Stacy Bell, the CPS worker, led Mrs. Barnes to believe appellant had
sexually assaulted A.S. before A.S. made his outcry statement to Mrs. Barnes,
there is no evidence that Mrs. Barnes attempted to influence A.S.=s statement.[2]


Appellant also suggests that A.S.=s testimony and his outcry statement
are unreliable because A.S. failed to disclose any sexual abuse to CPS workers
who visited A.S. while he was living with appellant.  This suggestion is likewise unsupported by
any evidence.  To the contrary, Dr. Welch
testified that Adam finally outcried to his foster
mother because he felt safe, and further stated that a delayed outcry is common
with victims of sexual abuse.  








A.S.=s testimony, his outcry statement to Mrs. Barnes, his statements
to others, and Dr. McNeese=s testimony that he exhibited signs
of penetrating anal trauma consistent with sexual abuse are legally and
factually sufficient evidence to sustain a conviction for aggravated sexual assault.  See Orona v. State,
836 S.W.2d 319, 322B23 (Tex. App.CAustin 1992, no pet.) (holding that child victim=s testimony that defendant penetrated
her anus and pediatrician=s testimony that the child exhibited a fissure on her rectum
was legally sufficient to uphold a conviction for aggravated sexual assault and
indecency with a child).  The jury was
free to reconcile conflicts in the evidence, to evaluate the credibility of the
witnesses, and determine the weight to be given the evidence.  See Johnson, 23 S.W.3d at 7; Cain
v. State, 958 S.W.2d 404, 408B09 (Tex. Crim.
App. 1997).  Further, it was within the
province of the jury to reject appellant=s testimony.  See Chambers v. State, 805 S.W.2d 459,
461 (Tex. Crim. App. 1991); Bowden v. State,
628 S.W.2d 782, 784 (Tex. Crim. App. 1982).  We cannot say that the jury=s decision was so contrary to the
weight of the evidence as to be manifestly unjust or wrong.  See Clewis,
922 S.W.2d at 135.  

We overrule appellant=s first and third issues.

2.         The Evidence
of Indecency with a Child

To prove the charge of indecency with a child, the State must
prove that the person accused:

(1)       engages in sexual contact with the child or causes the child
to engage in sexual contact; or

(2)       with intent to arouse or gratify the sexual desire of any
person:

(A)      exposes the person=s anus
or any part of the person=s genitals, knowing the child is present; or

(B)      causes the
child to expose the child=s anus or any part of the child=s genitals.

See Tex. Pen. Code ' 21.11(a).  The indictment charged that appellant
intentionally and knowingly engaged in sexual contact with A.S. by touching
A.S.=s genitals with the intent to arouse
and gratify appellant=s sexual desire. 
Appellant contends there is no or insufficient evidence that he intended
to arouse or gratify his sexual desire by touching A.S.=s genitals.

Appellant maintains that neither A.S.=s testimony nor his outcry statement
provide any evidence of appellant=s sexual activity or
gratification.  Appellant also points to
A.S.=s testimony that, as far as he
remembered, appellant was never naked around him, and he was never made to
touch appellant.  We disagree with
appellant=s characterization of the evidence
and find that it was legally and factually sufficient to support the jury=s finding that appellant touched A.S.
with sexual intent.








A.S. testified that appellant pulled his pants down, touched
his penis, and then touched his anus while he lay in bed.  A.S. also disclosed to therapist Tim Conley
that appellant Atouched him in a bad way@ and that appellant Arubbed and pulled@ on his Atalliewacker@ and Aput his finger in [his] buns.@ 
When he outcried to his foster mother that
appellant Apulled on [his] talliewacker
and stuck his finger up [his] butt,@ he indicated that appellant should
have been punished for doing so.  Thus,
even A.S. was aware that the way appellant was touching him was not
innocent.  Additionally, the medical
evidence revealed that A.S. was the victim of repeated anal penetration.  The jury could conclude, based on the
repeated nature and severity of the contact, that appellant was touching A.S.=s genitals to gratify his sexual
desires.  See Couchman
v. State, 3 S.W.3d 155, 163 (Tex. App.CFort Worth 1999, pet. ref=d).

There was also some evidence, although not entirely clear,
that appellant told A.S. not to tell others.[3]  An instruction to a victim of sexual abuse
not to reveal the events to anyone is evidence of a consciousness of guilt,
from which jurors are free to infer that appellant touched the victim with the
intent to arouse and gratify his own sexual desires.  See Montgomery v. State, 810 S.W.2d
372, 396 (Tex. Crim. App. 1990) (op. on reh=g).








The jury was free to take into consideration appellant=s conduct, remarks, and all the
surrounding circumstances of the offense. 
See McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981). 
And, despite appellant=s contention, a verbal
expression of intent by the defendant is not required to sustain a conviction
for indecency with a child.  See Couchman, 3 S.W.3d at 163.  The jury could infer directly from appellant=s conduct that he intended the
conduct, and that the contacts with A.S.=s penis and anus were performed
with the intent to arouse or gratify his sexual desire.  See Wallace, 52 S.W.3d at 234.  We cannot say that the jury=s finding is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. 

We overrule appellant=s second and fourth issues.

The trial court=s judgment is affirmed.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed November 25, 2003.

Panel
consists of Justices Yates, Hudson, and Fowler.

Do Not
Publish C Tex. R. App. P. 47.2(b).

 

 

 











[1]  Before that outcry, K.M. had made
outcries of sexual abuse against several others, and had received psychiatric
treatment and medication at various times for depression, bipolar disorder,
hallucinations associated with schizophrenia, as well as suicidal and homicidal
tendencies.





[2]  Mrs. Barnes
testified that A.S.=s outcry to her was as follows:

 

[A.S.] and
I were coming from a visit with his birth mom at the CPS office, Children=s Assessment Center, and I talked to Andrew about the
rules at our home and that if you didn=t go by the rules, there=s
usually a punishment, like take away a toy or take away the TV.  The conversation went on about punishment and
Andrew=s statement was, ANot
everybody gets punished.@  And I said, AMost of the time they do.@  He said, AMy daddy didn=t get punished.@  So, I said, Awhy
would he need to be punished?@  And he said,
these are his words, ABecause he pulled on my talliewacker
and stuck his finger up my butt.@





[3]  A.S.=s testimony was as follows:

 

Q.         And do you remember telling that lady that Leroy told you
not to tell?

A.         No.

Q.         Okay.  Now, are you
saying you don=t remember telling her that; or are you saying you did
not tell her that?

A..        Uh-uh.

Q.         Okay.  Do you think
you might have told that lady that, but you just forgot?

A.         I did
tell her that.