Anthony Allan COUCHMAN, Appellant,

v.

The STATE of Texas, State.

No. 2–98–116–CR.

Court of Appeals of Texas,
Fort Worth.

Sept. 9, 1999.

157

Paul Conner, Fort Worth, for Appellant.

Tim Curry, Dist. Atty., Charles M. Mallin, Curtis Jenkins, Lisa Callaghan, Sharon Johnson, Asst. Dist. Attys., for Appellee.

Panel B: DAY, RICHARDS, and BRIGHAM, JJ.

## OPINION

SAM J. DAY, Justice.

A jury convicted Anthony "Tony" Allan Couchman of indecency with a child and the trial court assessed punishment at six years' confinement. On appeal, Couchman alleges the trial court erred in allowing two witnesses to testify about statements the victim made to them. He also argues that the State failed to prove venue was proper in Tarrant County. Finally, he contends that the evidence was legally insufficient to prove his identity as the perpetrator or that he touched the complainant with intent to arouse or gratify himself.

We affirm.

### I. BACKGROUND

A.T., the complainant in this case, was born in March 1991 to Albert and Kim Taylor. Her parents separated the next year and later divorced. After the divorce, A.T. and her younger brother, K.T., lived with their mother in a house on Lagonda Street in Fort Worth. Their father eventually moved in with his sister, Patricia Arthur.

Couchman began dating Kim in late 1995 and moved into the house on Lagonda Street with her in January 1996. Toward the end of January, A.T.'s maternal grandmother, Linda Bisoul, was babysitting A.T. overnight in Bisoul's home. At bathtime, Bisoul explained to A.T. that she "needed to wash in her private places real good." A.T. told Bisoul that "she had a hole there," to which Bisoul responded, "Yeah, you do." A.T. then told Bisoul that "Tony put his finger there and it hurt."

On Friday, March 1, 1996, Arthur and Albert picked up A.T. and K.T. from their mother's Fort Worth home. The children played all day at Arthur's house and took a bath later that evening. After Arthur washed A.T.'s hair, she instructed her niece to wash the rest of her body. A.T. became upset and refused to wash her genital area, saying it hurt and burned.

When Arthur asked why A.T. was hurting, A.T. pointed to her genitals and said Tony had touched her and stuck his finger inside her.

On March 6, 1997, Couchman was indicted on charges of aggravated sexual assault and indecency with a child. After a jury trial, Couchman was acquitted of the aggravated sexual assault charge and found guilty of indecency with a child by contact.

## II. ADMISSION OF HEARSAY STATEMENTS

In his first two points, Couchman complains that the trial court erred in allowing Arthur and Bisoul to testify about A.T.'s out-of-court statements because they were hearsay not within any exception.[1] Specifically, he objects to A.T.'s statements that (1) her genitals hurt and burned, and (2) Tony touched her genitals and stuck his finger inside her.

### A. Standard of Review

As an appellate court, we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707, (1997); *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990). Therefore, we will not reverse a trial court as long as its ruling was within the "zone of reasonable disagreement." *Green*, 934 S.W.2d at 102; *see Montgomery*, 810 S.W.2d at 391. Moreover, if the trial court's ruling on the admission of evidence is correct under any theory of law, even if the trial court gives the wrong reason for its ruling, we must affirm the court's decision to admit the evidence. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990); *Pettigrew v. State*, 908 S.W.2d 563, 568 (Tex.App.—Fort Worth 1995, pet. ref'd).

Because the trial court in this case did not specify the basis for admitting A.T.'s out-of-court statements, we must determine whether the record supports a conclusion that the statements fell within one or more of the recognized hearsay exceptions.

### B. The Victim's Statements to Arthur

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R. Evid. 801(d). Hearsay is inadmissible at trial except as provided by statute or by the rules of evidence. *See* Tex.R. Evid. 802; *Long v. State*, 800 S.W.2d 545, 547 (Tex.Crim.App.1990). Rule 803(3) of the rules of evidence provides for the admissibility of a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health)." Tex.R. Evid. 803(3). As Couchman acknowledges, A.T.'s statement to Arthur regarding the pain in her genital area was admissible under this section.

■ Rule 803(3) does not, however, include "a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of [the] declarant's will." *Id.; Gibbs v. State*, 819 S.W.2d 821, 837 (Tex.Crim.App.1991), *cert. denied*, 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992). A.T.'s statements that Couchman put his finger inside her genitals and hurt her are statements of memory to prove the fact remembered that are inadmissible under this exception. This does not end our inquiry, however, because another exception applies.

■ Rule 803(2) of the rules of evidence provides that a statement is not excluded by the hearsay rule if it is "[a]

---

**1.** It is undisputed that the State did not provide the requisite notice to offer these statements under the outcry provision of article 38.072 of the code of criminal procedure. *See* Tex.Code Crim. Proc. Ann. art. 38.072 (Vernon Supp.1999).

statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex.R. Evid. 803(2). This exception is founded on the belief that statements made as a result of a startling event or condition are involuntary and do not allow the declarant an adequate opportunity to fabricate, thereby ensuring enough trustworthiness to fall outside the hearsay exception. *See Hunt v. State,* 904 S.W.2d 813, 816–17 (Tex. App.—Fort Worth 1995, pet. ref'd). In order for the utterance to be admissible under the Rule 803(2) exception, the statement must be the product of a startling occurrence, the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence, and the statement must be related to the circumstances of the startling occurrence. *See McFarland v. State,* 845 S.W.2d 824, 846 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *Sellers v. State,* 588 S.W.2d 915, 918 (Tex.Crim.App. [Panel Op.] 1979).

■ No single rigid principle governs the admissibility of statements under the excited utterance rule. *See Jones v. State,* 772 S.W.2d 551, 554–55 (Tex.App.—Dallas 1989, pet. ref'd). The focus of the inquiry is whether the cumulative effect of the three requisites is sufficient to show the reliability of the statement. *See Sellers,* 588 S.W.2d at 918. Although the other factors are relevant, the critical issue is whether the declarant made the statement while dominated by the emotion arising from a startling event or condition. *See McFarland,* 845 S.W.2d at 846; *Hunt,* 904 S.W.2d at 816.

■ We also note that the startling occurrence that triggers an excited utterance need not necessarily be the crime itself. *See Hunt,* 904 S.W.2d at 816. In *Hunt,* an eleven-year-old girl was sexually assaulted by her father's friend. Three months later, she saw a television show about a young rape victim who had been stabbed by her attacker. *Id.* at 815. The girl began to cry uncontrollably and told her mother about the sexual assault. At trial, the victim testified that upon seeing the news program, she had become fearful that she might be pregnant. *Id.* at 816. We held that the shock of seeing the television news program triggered the victim's out-of-court statements, and her fear of pregnancy was startling enough to produce a state of nervous excitement so as to render her subsequent remarks spontaneous. *Id.* at 816–17.

■ In this case, Couchman argues that A.T.'s statements were inadmissible as excited utterances because the trial court expressly ruled that they were "too far removed from the original [offense] to be an excited utterance." We need not resort back to the actual offense, however, to find a startling occurrence that would bring A.T.'s statements under the Rule 803(2) exception. Arthur testified that after A.T. said her vaginal area was hurting and burning, Arthur removed the child from the bathtub and laid her on the bed. Arthur examined A.T.'s genitals, which appeared red, swollen, and irritated. When Arthur tried to question A.T. about the pain, the child was so upset that she could not speak. Arthur testified that A.T. eventually calmed down enough to talk, but the child remained "scared, crying[,] and upset."

The plain language of Rule 803(2) provides that either a startling event *or condition* may provoke a statement that is admissible as an excited utterance. *See* Tex.R. Evid. 803(2). Under the circumstances, the startling condition that evoked A.T.'s statements could have been the pain she was experiencing. At the time of A.T.'s statements, she was only four years old. Undoubtedly, some events or conditions that may not be startling to an adult may be overwhelming for a child. It would be reasonable to infer that a four-year-old child would be scared and upset by a burning sensation in her female sexual organ.

The record also reflects that A.T. was still "scared, crying[,] and upset" when she told her aunt and father about the abuse. Because the child was still dominated by the emotions arising from the frightening condition, her statements were made before she had a chance to fabricate and are thus sufficiently trustworthy. In addition, A.T.'s statements that Couchman had touched her and stuck his finger inside her related to the exciting condition that triggered her statements; i.e., why her genitals were hurting.

In light of the victim's age and the surrounding circumstances, we hold that the painful condition in her genital region was sufficiently startling such that the child's subsequent statements about Tony touching her were most likely made spontaneously and without reflection.[2] Because the statements were made while she was still under the excitement of the startling condition and related to condition, the trial court did not abuse its discretion in admitting them. Point one is overruled.

### C. The Victim's Statements to Bisoul

■ In his second point, Couchman asserts that the trial court abused its discretion in allowing Bisoul to testify about A.T.'s out-of-court statement that "Tony put his finger there and it hurt" because it was hearsay that did not fall within any exception.[3] However, even if the trial court erred in admitting this statement, Rule 44.2 of the Texas Rules of Appellate Procedure mandates that we must disregard the error as long as it is not of constitutional magnitude and did not affect Couchman's substantial rights. *See* TEX. R.APP. P. 44.2; *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied,* —— U.S. ——, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.—Fort Worth 1998, pet. ref'd) (en banc). An appellant's substantial rights are affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Coggeshall,* 961 S.W.2d at 643.

■ Assuming without deciding that the trial court's ruling was erroneous, we must determine the applicable standard of review. Couchman complains that the alleged error is one of constitutional dimension that must be reviewed under Rule 44.2(a).[4] We disagree. Both the court of criminal appeals and this court have treated a violation of the evidentiary rules that results in the erroneous admission of evidence as *non-constitutional* error. *See Johnson,* 967 S.W.2d at 417 (applying Rule 44.2(b) harm analysis to the erroneous admission of hearsay evidence); *King,* 953 S.W.2d at 271 (same); *Armstead v. State,* 977 S.W.2d 791, 796 (Tex.App.—Fort Worth 1998, pet. ref'd) (noting that "the admission of otherwise inadmissible hearsay is not constitutional error"). We thus apply a Rule 44.2(b) harm analysis and will disregard the error unless it affected Couchman's substantial rights.

■ It is well-established that the improper admission of evidence does not

---

**2.** We note that simply because some of A.T.'s statements relate to an event that happened before the startling occurrence does not make the utterance inadmissible. *See Sellers,* 588 S.W.2d at 918–19; *Bondurant v. State,* 956 S.W.2d 762, 766 (Tex.App.—Fort Worth 1997, no pet.). Likewise, the fact that portions of A.T.'s assertions were made in response to questions from her aunt and father does not automatically render that portion of her statements inadmissible. *See McFarland,* 845 S.W.2d at 846. These are merely factors for the trial court to consider in weighing wheth-

er the victim's statements were sufficiently reliable and spontaneous.

**3.** Unlike the emotional episode with Arthur, Bisoul testified that A.T. was "very matter of fact" and "blank" while describing the occurrence.

**4.** Constitutional error requires reversal unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* TEX.R.APP. P. 44.2(a).

constitute reversible error if the same facts are proved by other properly admitted evidence. *See Anderson v. State,* 717 S.W.2d 622, 628 (Tex.Crim.App.1986). Here, Arthur had previously testified to the same matter as Bisoul—A.T.'s out-of-court statement that Couchman had penetrated her female sexual organ with his finger—and we have already held that this statement was admissible as an excited utterance. A.T.'s statement to Bisoul is merely cumulative of Arthur's properly admitted testimony on the same issue. Thus, even if the trial court erred in allowing Bisoul to testify about A.T.'s out-of-court statement, we must disregard the error because it could not have affected Couchman's substantial rights. *See* Tex. R.App. P. 44.2(b). Point two is overruled.

### III. VENUE

In point three, Couchman alleges the trial court's ruling was erroneous because the State failed to prove venue was proper in Tarrant County. Specifically, he asserts that although the State may have established that A.T. lived with her mother and Couchman in Tarrant County, there is no evidence that the offense occurred at Kim's house.

Failure to prove venue in the county of prosecution is reversible error. *See Black v. State,* 645 S.W.2d 789, 791 (Tex.Crim.App.1983); *Knabe v. State,* 836 S.W.2d 837, 839 (Tex.App.—Fort Worth 1992, pet. ref'd). It is presumed that venue is proven in the trial court unless the record affirmatively shows otherwise or venue is made an issue at trial. *See* Tex. R.App. P. 44.2(c)(1).

Venue in criminal cases need only be proven by a preponderance of the evidence, which may be either direct or circumstantial. Tex.Code Crim. Proc. Ann. art. 13.17 (Vernon 1977); *see Black,* 645 S.W.2d at 790. The trier of fact may make reasonable inferences from the evidence to decide the issue of venue. *See Lozano v. State,* 958 S.W.2d 925, 929 (Tex.App.—El

Paso 1997, no pet); *Benavides v. State,* 763 S.W.2d 587, 588–89 (Tex.App.—Corpus Christi 1988, pet. ref'd). The evidence is sufficient to establish venue if "from [that] evidence the jury may reasonably conclude that the offense was committed in the county alleged." *Rippee v. State,* 384 S.W.2d 717, 718 (Tex.Crim.App.1964); *Knabe,* 836 S.W.2d at 839.

In this case, no one directly testified that the offense took place in Tarrant County, but sufficient circumstantial evidence was offered for the jury to reasonably infer that the offense occurred there. At trial, Bisoul testified that in late January 1996, Couchman moved in with Bisoul's daughter, Kim. Bisoul said Kim and Couchman lived in a house on Lagonda Street in Tarrant County the entire time they were together. She also testified that Couchman's house was located in Tarrant County. Bisoul never knew them to leave Tarrant County during their relationship.

Arthur testified that State's exhibit number two was a picture of the house where she went with Albert to pick up A.T. and K.T. on March 1, 1996. She testified that the house was in Tarrant County.

During an interview with Ray Viana at the Fort Worth Police Department on March 26, 1996, Couchman admitted that he had touched A.T.'s genitals twice for "hygienic purposes" while bathing A.T. He told Viana that the first incident occurred shortly after he had moved in with Kim (in January) and the second incident occurred in February.

A jury, sitting as the trier of fact, could reasonably infer that the touchings Couchman admitted to were the same touchings A.T. told her grandmother and aunt about in January and the first week of March. In January, Bisoul looked at A.T.'s genitals after the child said Couchman had touched her there. Arthur also examined A.T.'s genitals after the child complained of pain in that area. Both relatives testified that A.T.'s genital area appeared to be red, swollen, and inflamed. The jury could in-

fer that A.T.'s pain and the redness that Bisoul and Arthur observed were caused by Couchman touching her. Moreover, because the episodes occurred while A.T. was in the bathtub, it would also be reasonable for the jury to infer that Couchman would be bathing the child at the house where they both lived, which was in Tarrant County. The State therefore established by a preponderance of the evidence that Couchman committed the offense in Tarrant County. Accordingly, we find that the trial court did not err in denying Couchman's motion for directed verdict and we overrule Couchman's third point.

## IV. SUFFICIENCY OF THE EVIDENCE

In his fourth and fifth points, Couchman challenges the legal sufficiency of the evidence to support his conviction for the offense of indecency with a child. In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *See Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). In assessing the sufficiency of the evidence to support a conviction, a reviewing court must consider all the evidence that the jury was permitted to consider, even if the trial court erred in admitting it. *See Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App.1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

A person commits the offense of indecency with a child if he engages in sexual contact with a child who is younger than

17 years and not his spouse. TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 1994). "Sexual contact" is defined as "any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." *Id.* § 21.01(2). Here, the State had to present evidence sufficient to show that Couchman touched A.T.'s genitals with intent to arouse or gratify his own sexual desire.

### A. Identity

Couchman contends the evidence is legally insufficient for a rational jury to conclude that he is the same "Tony" identified in the out-of-court statements made by A.T. In particular, Couchman focuses on the fact that A.T. never identified him as the perpetrator in court.

Identity of a perpetrator may be proven by either direct or circumstantial evidence. *See Earls v. State,* 707 S.W.2d 82, 85 (Tex.Crim.App.1986). In *Meeks v. State,* we decided that the absence of an in-court identification did not render the evidence insufficient on the issue of identity. *See* 897 S.W.2d 950, 954–55 (Tex. App.—Fort Worth 1995, no pet.). The victim in that case testified that a babysitter named "Johnny" sexually assaulted her. The victim's mother testified that the appellant and his wife were in charge of babysitting the victim and she positively identified "Johnny" as "Johnny Meeks." In his confession, the appellant admitted that he engaged in sexual acts with a girl named "[A]," the victim's common name. Finally, the State introduced a medical report that identified the perpetrator as "Johhny [sic] Meeks." We concluded that the evidence was sufficient to show that appellant was the perpetrator. *Id.* at 955.

In this case, even though A.T. did not identify anyone in court, she did testify that "Tony" had touched her in an area that "[i]t was not okay to touch" and it hurt.[5] Furthermore, her grandmother

---

5. A.T.'s testimony was somewhat ambiguous.

She initially stated that Tony had touched her,

testified that Couchman went by the name of "Tony" and not "Anthony." Bisoul also testified that when A.T. told her about "Tony" touching her genitals, Couchman was the only "Tony" the child knew. At the conclusion of Bisoul's testimony, the State asked her to point out the person named "Tony" to whom she had referred in her testimony. Bisoul identified Couchman.

In addition, Ray Viana, an interviewer for the City of Fort Worth, testified that on March 26, 1996, Couchman admitted during an interview that he had touched A.T.'s genitals twice. Viana identified Couchman as the person he interviewed that day. This evidence is sufficient for a rational juror to conclude that Couchman and "Tony" were the same person, and that Couchman was the perpetrator in this offense. Point four is overruled.

### B. Intent

■ In his fifth point, Couchman contends the evidence was legally insufficient to show that he touched A.T.'s genitals with the required culpable mental state, i.e., with intent to arouse or gratify Couchman's sexual desires.

■ The specific intent to arouse or gratify the sexual desire of a person can be inferred from conduct, remarks, or all the surrounding circumstances. *See McKenzie v. State,* 617 S.W.2d 211, 216 (Tex. Crim.App. [Panel Op.] 1981); *Santos v. State,* 961 S.W.2d 304, 308 (Tex.App.— Houston [1st Dist.] 1997, pet. ref'd). An oral expression of intent is not required, and a defendant's conduct alone is sufficient to infer intent. *See Tyler v. State,* 950 S.W.2d 787, 789 (Tex.App.—Fort Worth 1997, no pet.).

Here, Couchman's intent can be inferred from the act itself and from his conduct afterward. Couchman initially told Viana

that he had never touched A.T.'s genitals or inserted his finger there. He said he had washed A.T.'s hair once while her mother was present, but that was all. Later in the same interview, Couchman admitted that he had touched A.T.'s genitals twice-once shortly after moving in with her mother in January 1996, and again in February 1996. Couchman maintained that the touching was for "hygienic purposes" and denied that he had ever touched A.T. with sexual intent.

On appeal, Couchman does not dispute the fact that he told Viana he touched A.T.'s genitals on two occasions. However, he argues that his statements to Viana that he did so only for "hygienic purposes" showed that he lacked the culpable mental state. We disagree.

■ In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991). Here, both A.T.'s aunt and grandmother testified that A.T. said Couchman stuck his finger inside her female sexual organ and it hurt. It was reasonable for the jury to conclude that if Couchman had truly touched A.T.'s genitals only for "hygienic purposes," she would not have experienced pain afterward. In addition, both Arthur and Bisoul testified that when they examined A.T. immediately after she confided in them, her genitals appeared red, swollen, and irritated. The jury could have reasonably concluded that this was from Couchman touching her and that the irritated condition was inconsistent with a simple "hygienic" cleaning. Finally, the fact that

but refused to say where she was touched or indicate on a female doll. She later testified that Tony had touched her with his finger in a place that "was not okay" for him to touch and it hurt. However, when asked to identify

the place that he touched, she indicated her navel. She also later denied that Tony had hurt her when he touched her. Even so, at no point did she equivocate on the issue of *who* touched her.

Couchman initially changed his story is evidence of his consciousness of guilt. The jury could have reasonably concluded that Couchman lied to Viana because he had something to hide.

Viewing this evidence in the light most favorable to the jury's verdict, a rational jury could have found the evidence was sufficient to prove Couchman touched A.T. with intent to arouse or sexually gratify himself. We overrule point five.

## V. CONCLUSION

Having overruled Couchman's points on appeal, we affirm the trial court's judgment.