IN THE MATTER OF D.B.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-110-CV

IN THE MATTER OF D.B. APPELLANT

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is a juvenile appeal from an adjudication of delinquent conduct.  The juvenile court found that Appellant D.B., who was thirteen-years-old at the time of trial, had engaged in delinquent conduct by committing the offense of indecency with a child against C.E. and A.Y.  In one issue, Appellant complains that the evidence is legally insufficient to show that he touched C.E. or A.Y. with the required culpable mental state, that is, with the intent to arouse or gratify his sexual desires.  We will affirm.

I.  Factual Background

On July 13, 2001, the State filed its original petition to adjudicate Appellant delinquent of indecency with C.E. and A.Y.  Appellant waived his right to a jury trial, and the case was tried to the bench in March 2002.  In support of its case, the State offered the testimony of C.E. and A.Y., and it offered, without objection, their written statements from April 19, 2001.  Three other witnesses, G.Y., P.M., and O.S., testified to their observations concerning Appellant’s actions toward A.Y. 

During the 2000-2001 school year, Appellant, C.E., A.Y., G.Y., P.M.,  and O.S. were all students at Kirby Junior High School in Wichita Falls, Texas. After school, they rode the bus together.  Both C.E. and A.Y. described the chaotic atmosphere of the bus on which they rode.  A.Y. testified that “[e]veryone was out of their seats, . . . running around, and screaming.”  A.Y. stated that there were no rules on the bus except to pick up any trash from the Cokes and candy the bus driver permitted the children to consume.  Likewise, C.E. described the bus as follows:  “It was usually loud, noisy, kids out of control.  The bus driver really didn’t do [any]thing about it.”  Neither Appellant nor the State called the bus driver to testify.

C.E. and A.Y. testified that, during the spring semester of 2001, they began having problems with Appellant.  C.E. stated that Appellant “would feel on us, hit us.”  C.E. further explained that Appellant “would feel on our breasts, on our butts, on our lower areas, wherever,” and she stated that her “lower area” referred to her vagina.  C.E. also testified that Appellant reached beneath her clothes, unbuttoned her pants, and touched her vaginal area.  C.E. repeatedly asked Appellant to stop, but he persisted in groping and touching her for several months.  

Often, when C.E. tried to get away or move seats, Appellant would follow her to another seat on the bus.  C.E. said she was scared to tell anyone about Appellant’s conduct because he had hit her with his fists in the past and had threatened to hurt her.  One time, Appellant told C.E. “that he was in a gang” and that he would hurt her.  In her written statement, C.E. wrote that “he will call us bitches[,] you dick sucker[,] or you mother fucker.”  

C.E. also testified that she saw Appellant exhibit the same behavior toward A.Y.  According to C.E., Appellant grabbed A.Y., got on top of her, unbuttoned her pants, hit her, and did the same things he did to C.E.  When A.Y. testified, she stated, “[Appellant] would slap my bottom as  I walked back towards the back, he would grab between my legs, my vagina area, and he would grab my chest, my breasts, and that’s pretty much it.”  A.Y. testified that she would tell Appellant to stop and that she pushed him away.  When asked whether she thought Appellant intended to hurt her, A.Y. testified, “Really I don’t think he had an intention to hurt anybody.  He was just trying to have fun, trying to be funny.  And it wasn’t funny.”  On cross-examination, A.Y. agreed that she thought Appellant was trying to be funny and that he was “[j]ust playing around,” but she also testified that she did not appreciate his conduct and found it to be obnoxious, as well as inappropriate. 

A.Y. also testified that Appellant had threatened to hurt her if she told anyone about his conduct and that he had slapped her in the face before.  Appellant told A.Y. “that he was in a gang and that he would have somebody shoot [her] or he’d do it hi[m]self.”  A.Y. wrote in her written statement, “Once he was filling [sic] on me and I told him I was going to report him to [the school principal] and his exact words ‘If you tell I will shoot your motherfucken ASS!’” A.Y. stated that Appellant repeatedly called her a “dirty dick sucker,” and she wrote that his verbal and physical harassments had been a daily occurrence between January and April 2001. 

G.Y., P.M., and O.S. also testified that, on more than one occasion, they observed Appellant touch A.Y. on her breasts and in between her legs.  During G.Y.’s cross-examination, Appellant’s counsel asked him, “[I]f I told you that -- that [A.Y.] testified that she thought [Appellant] was trying to be funny, do you think that would be the way to describe . . . what appeared to be going on?” G.Y. agreed.  When Appellant’s counsel asked P.M. whether “there were people on the bus who thought what was happening was funny,” P.M. stated, “Probably was, but I couldn’t tell you that because I’m not in their head.”  P.M. then testified that he never saw anyone laughing and that he did not think Appellant was touching A.Y. just to get the other students’ attention. 

G.Y., P.M., and O.S. also testified that Appellant continued to touch A.Y., despite her attempts to have him stop touching her.  While none of these witnesses testified that they observed Appellant touch C.E., A.Y. testified that she observed Appellant touch C.E. “[t]he same way he touched me but inside -- sometimes he’d go inside her clothes like down the neck of her shirt.”  C.E. and A.Y. eventually told a counselor and then their principal about Appellant’s conduct toward them on the bus.  C.E. testified that after she and A.Y. went to the principal, Appellant never rode their bus again.   

In his defense, Appellant called an employee of Southwest Student Transportation (SST), which was the school bus company for the City of Wichita Falls.  Appellant also showed a videotape from a camera mounted inside the bus.  Initially, Appellant’s mother pointed her son out in the video tape.  As the tape continued, however, Appellant’s mother testified that she did not see her son or A.Y. on the bus.  In its rebuttal case, the State called Michael Brown, who was another employee of SST, to testify about the video equipment on the school district’s busses.  The tape Appellant ran in court only covered April 16 through April 19 because, according to Brown, the bus-mounted tapes last between four to six hours before the machines rewind themselves and record over whatever is on the tapes. 

After hearing and considering all of the evidence before it, the juvenile court determined that Appellant committed the offense of indecency with a child against both C.E. and A.Y. and adjudicated Appellant delinquent.  In March 2003, the court conducted a disposition hearing and heard testimony from Appellant, his mother, and a juvenile probation officer who had been working with Appellant.  The court also took into consideration the following evidence:  Appellant’s social history,
(footnote: 2) psychological evaluation, mental retardation evaluation, and a letter from the Rose Street Clinic to the juvenile court.  On March 19, 2003, the juvenile court determined that Sanction Level Four probation was the appropriate disposition for Appellant.

 

II.  Indecency with a child

In his sole issue, Appellant argues that the State failed to offer legally sufficient evidence that he touched C.E. or A.Y. with the specific intent to arouse or gratify his sexual desires.
(footnote: 3)  
See
 
Tex. Penal Code Ann.
 § 21.11(a)(1) (Vernon 2003).  Appellant contends that the evidence merely shows he was involved in “simple horseplay” and that he did not intend to achieve sexual gratification.  In response, the State argues that the evidence was legally sufficient to support the trial court’s determination that Appellant acted with the requisite intent.  We agree with the State.

III.  Standard of Review

Consistent with fundamental due process requirements, no person may be convicted of a criminal offense unless criminal responsibility for the offense is proved beyond a reasonable doubt.  U.S. 
Const.
 Amend. XIV; 
Alvarado v. State
, 912 S.W.2d 199, 206-07 (Tex. Crim. App. 1995) (citing 
In re Winship
, 397 U.S. 358, 364, 90 S. Ct. 1068, 1072-73 (1970)).  When juvenile appellants complain that the evidence is legally insufficient to support the adjudication of delinquency, we apply the criminal standard of review, which is more stringent than the “no evidence” standard applicable in civil cases.  
In re J.D.P.,
 85 S.W.3d 420, 422 (Tex. App.—Fort Worth 2002, no pet.).

The relevant question is not whether there is 
any
 evidence to support a state-court conviction, but whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt.  
Jackson v. Virginia, 
443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979).  In reviewing the legal sufficiency of the evidence under the criminal standard, we view all the evidence in the light most favorable to the judgment in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson, 
443 U.S. at 319; 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

In determining the legal sufficiency of the evidence, and faced with a record that supports conflicting inferences, we “must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.”  
Matson v. State, 
819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The standard of review is the same for direct and circumstantial evidence cases.  
Burden
, 55 S.W.3d at 613; 
Kutzner v. State
, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

IV.  Application of Law to the Facts

A person commits the offense of indecency with a child if he engages in sexual contact with a child who is younger than seventeen years of age and who is not his spouse.  
Tex. Penal Code Ann.
 § 21.11(a)(1); 
Couchman v. State
, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref’d).  For purposes of section 21.11, 

“sexual contact” means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child;  or

(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

Tex. Penal Code Ann.
 § 21.11(c).  The specific intent to arouse or gratify the sexual desire of a person can be inferred from conduct, remarks, or all the surrounding circumstances.  
See McKenzie v. State,
 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981);  
Couchman
, 3 S.W.3d at 163.  An oral expression of intent is not required, and a defendant’s conduct alone is sufficient to infer intent.  
Couchman
, 3 S.W.3d at 163.

Appellant hones in on the testimony from A.Y. and G.Y., in which they characterize Appellant as “trying to be funny,” and he argues that this evidence shows he did not have the requisite intent.  In his brief, Appellant argues that while “[he] is probably guilty of assaulting [C.E. and A.Y.], . . . he is certainly not guilty of indecency with those two girls.”  Here, as in 
Couchman
, Appellant’s intent can be inferred from his conduct, words, and the surrounding circumstances.  
See id
.  Moreover, in applying the legal sufficiency standard of review, we must presume—even if it does not affirmatively appear in the record—that the juvenile court, as the trier of fact, resolved any conflicting inferences in favor of the prosecution, and we must defer to that resolution.  
Matson, 
819 S.W.2d at 846. 

The State presented evidence that Appellant repeatedly groped and touched  C.E. and A.Y.  Both C.E. and A.Y. stated that Appellant referred to them with sexually explicit language.  The two girls also testified that Appellant threatened to hurt them if they told anyone about his conduct.  This evidence supports an inference that Appellant touched C.E. and A.Y. with the requisite intent, i.e, that he touched them with the intent to arouse or sexually gratify himself.  
See 
Tex. Penal Code Ann.
 § 21.11(a)(1); 
Branson v. State,
 825 S.W.2d 162, 168 (Tex. App.—Dallas 1992, no pet.) (holding evidence sufficient to support conviction for indecency with child where defendant threatened victim not to tell anyone what had happened); 
Shane v. State,
 685 S.W.2d 89, 91 (Tex. App.—Beaumont 1984, no pet.) (holding evidence that defendant told victim not to tell anyone about abuse supported inference that defendant knew act was wrong and committed the abuse with the intent to arouse or gratify his sexual desire); 
see also Keele v. State
, No. 04-02-00132-CR, 2003 WL 21076655, at *1 (Tex. App.—San Antonio May 14, 2003, pet. ref’d) (memo. op.) (not designated for publication) (holding requisite intent could be inferred from evidence of repeated sexual contact, threats to rape the victim if she told anyone, and defendant’s love letters to the victim);
(footnote: 4) 
Dease v. State
, No. 01-02-00096-CR, 2003 WL 124817, at *3 (Tex. App.—Houston [1
st
 Dist.] Jan. 16, 2003, pet. ref’d) (memo. op.) (not designated for publication) (holding evidence legally sufficient to establish requisite intent where, after defendant touched victim, he told her not to tell anyone about it).

We have reviewed the record extensively, and under the applicable standard of review, giving due deference to the fact finder’s determinations, we hold that the evidence is legally sufficient to support the juvenile court’s determination that Appellant engaged in delinquent conduct by committing the offense of indecency with a child against C.E. and A.Y.  Accordingly, we overrule Appellant’s sole issue.

V.  Conclusion

Having overruled Appellant’s sole issue, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: GARDNER, J.; CAYCE, C.J.; and WALKER, J.

DELIVERED:
  December 4, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
We note that Appellant’s social history indicates that in 2000 he had previously been adjudicated delinquent and placed on Sanction Level III probation for unlawfully carrying a weapon. 

3:
Appellant does not challenge the factual sufficiency of the evidence.

4:
See
 
Tex. R. App. P.
 47.7 (providing that unpublished cases may be cited, although they have no precedential value).