COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO.  
2-03-110-CV
 
IN THE MATTER OF D.B.                                                        APPELLANT 

------------
 
FROM THE 
78TH DISTRICT COURT OF WICHITA COUNTY 
 
------------
 
MEMORANDUM OPINION



 
------------
        This is a juvenile appeal from an adjudication of delinquent conduct. The 
juvenile court found that Appellant D.B., who was thirteen-years-old at the time 
of trial, had engaged in delinquent conduct by committing the offense of 
indecency with a child against C.E. and A.Y. In one issue, Appellant complains 
that the evidence is legally insufficient to show that he touched C.E. or A.Y. 
with the required culpable mental state, that is, with the intent to arouse or 
gratify his sexual desires. We will affirm. 
I. Factual Background
        On July 13, 2001, the State filed its original petition to adjudicate 
Appellant delinquent of indecency with C.E. and A.Y. Appellant waived his 
right to a jury trial, and the case was tried to the bench in March 2002. In 
support of its case, the State offered the testimony of C.E. and A.Y., and it 
offered, without objection, their written statements from April 19, 2001. Three 
other witnesses, G.Y., P.M., and O.S., testified to their observations concerning 
Appellant’s actions toward A.Y. 
        During the 2000-2001 school year, Appellant, C.E., A.Y., G.Y., P.M., 
and O.S. were all students at Kirby Junior High School in Wichita Falls, Texas. 
After school, they rode the bus together. Both C.E. and A.Y. described the 
chaotic atmosphere of the bus on which they rode. A.Y. testified that 
“[e]veryone was out of their seats, . . . running around, and screaming.” A.Y. 
stated that there were no rules on the bus except to pick up any trash from the 
Cokes and candy the bus driver permitted the children to consume. Likewise, 
C.E. described the bus as follows: “It was usually loud, noisy, kids out of 
control. The bus driver really didn’t do [any]thing about it.” Neither Appellant 
nor the State called the bus driver to testify. 
        C.E. and A.Y. testified that, during the spring semester of 2001, they 
began having problems with Appellant. C.E. stated that Appellant “would feel 
on us, hit us.” C.E. further explained that Appellant “would feel on our breasts, 
on our butts, on our lower areas, wherever,” and she stated that her “lower 
area” referred to her vagina. C.E. also testified that Appellant reached beneath 
her clothes, unbuttoned her pants, and touched her vaginal area. C.E. 
repeatedly asked Appellant to stop, but he persisted in groping and touching her 
for several months. 
        Often, when C.E. tried to get away or move seats, Appellant would 
follow her to another seat on the bus. C.E. said she was scared to tell anyone 
about Appellant’s conduct because he had hit her with his fists in the past and 
had threatened to hurt her. One time, Appellant told C.E. “that he was in a 
gang” and that he would hurt her. In her written statement, C.E. wrote that 
“he will call us bitches[,] you dick sucker[,] or you mother fucker.” 
        C.E. also testified that she saw Appellant exhibit the same behavior 
toward A.Y. According to C.E., Appellant grabbed A.Y., got on top of her, 
unbuttoned her pants, hit her, and did the same things he did to C.E. When 
A.Y. testified, she stated, “[Appellant] would slap my bottom as I walked back 
towards the back, he would grab between my legs, my vagina area, and he 
would grab my chest, my breasts, and that’s pretty much it.” A.Y. testified 
that she would tell Appellant to stop and that she pushed him away. When 
asked whether she thought Appellant intended to hurt her, A.Y. testified, 
“Really I don’t think he had an intention to hurt anybody. He was just trying 
to have fun, trying to be funny. And it wasn’t funny.” On cross-examination, 
A.Y. agreed that she thought Appellant was trying to be funny and that he was 
“[j]ust playing around,” but she also testified that she did not appreciate his 
conduct and found it to be obnoxious, as well as inappropriate. 
        A.Y. also testified that Appellant had threatened to hurt her if she told 
anyone about his conduct and that he had slapped her in the face before. 
Appellant told A.Y. “that he was in a gang and that he would have somebody 
shoot [her] or he’d do it hi[m]self.” A.Y. wrote in her written statement, “Once 
he was filling [sic] on me and I told him I was going to report him to [the school 
principal] and his exact words ‘If you tell I will shoot your motherfucken ASS!’” 
A.Y. stated that Appellant repeatedly called her a “dirty dick sucker,” and she 
wrote that his verbal and physical harassments had been a daily occurrence 
between January and April 2001. 
        G.Y., P.M., and O.S. also testified that, on more than one occasion, they 
observed Appellant touch A.Y. on her breasts and in between her legs. During 
G.Y.’s cross-examination, Appellant’s counsel asked him, “[I]f I told you that -- 
that [A.Y.] testified that she thought [Appellant] was trying to be funny, do you 
think that would be the way to describe . . . what appeared to be going on?” 
G.Y. agreed. When Appellant’s counsel asked P.M. whether “there were people 
on the bus who thought what was happening was funny,” P.M. stated, 
“Probably was, but I couldn’t tell you that because I’m not in their head.” P.M. 
then testified that he never saw anyone laughing and that he did not think 
Appellant was touching A.Y. just to get the other students’ attention. 
        G.Y., P.M., and O.S. also testified that Appellant continued to touch A.Y., 
despite her attempts to have him stop touching her. While none of these 
witnesses testified that they observed Appellant touch C.E., A.Y. testified that 
she observed Appellant touch C.E. “[t]he same way he touched me but inside -- 
sometimes he’d go inside her clothes like down the neck of her shirt.” C.E. and 
A.Y. eventually told a counselor and then their principal about Appellant’s 
conduct toward them on the bus. C.E. testified that after she and A.Y. went 
to the principal, Appellant never rode their bus again. 
        In his defense, Appellant called an employee of Southwest Student 
Transportation (SST), which was the school bus company for the City of 
Wichita Falls. Appellant also showed a videotape from a camera mounted 
inside the bus. Initially, Appellant’s mother pointed her son out in the video 
tape. As the tape continued, however, Appellant’s mother testified that she did 
not see her son or A.Y. on the bus. In its rebuttal case, the State called 
Michael Brown, who was another employee of SST, to testify about the video 
equipment on the school district’s busses. The tape Appellant ran in court only 
covered April 16 through April 19 because, according to Brown, the bus-mounted tapes last between four to six hours before the machines rewind 
themselves and record over whatever is on the tapes. 
        After hearing and considering all of the evidence before it, the juvenile 
court determined that Appellant committed the offense of indecency with a 
child against both C.E. and A.Y. and adjudicated Appellant delinquent. In 
March 2003, the court conducted a disposition hearing and heard testimony 
from Appellant, his mother, and a juvenile probation officer who had been 
working with Appellant. The court also took into consideration the following 
evidence: Appellant’s social history, 
 

 psychological evaluation, mental 
retardation evaluation, and a letter from the Rose Street Clinic to the juvenile
court. On March 19, 2003, the juvenile court determined that Sanction Level
Four probation was the appropriate disposition for Appellant.
 
II. Indecency with a child 
        In his sole issue, Appellant argues that the State failed to offer legally 
sufficient evidence that he touched C.E. or A.Y. with the specific intent to 
arouse or gratify his sexual desires. 
 

 See Tex. Penal Code Ann. § 21.11(a)(1) 
(Vernon 2003). Appellant contends that the evidence merely shows he was 
involved in “simple horseplay” and that he did not intend to achieve sexual 
gratification. In response, the State argues that the evidence was legally 
sufficient to support the trial court’s determination that Appellant acted with 
the requisite intent. We agree with the State. 
III. Standard of Review
        Consistent with fundamental due process requirements, no person may 
be convicted of a criminal offense unless criminal responsibility for the offense 
is proved beyond a reasonable doubt. U.S. Const. Amend. XIV; Alvarado v. 
State, 912 S.W.2d 199, 206-07 (Tex. Crim. App. 1995) (citing In re Winship, 
397 U.S. 358, 364, 90 S. Ct. 1068, 1072-73 (1970)). When juvenile 
appellants complain that the evidence is legally insufficient to support the 
adjudication of delinquency, we apply the criminal standard of review, which 
is more stringent than the “no evidence” standard applicable in civil cases. In 
re J.D.P., 85 S.W.3d 420, 422 (Tex. App.—Fort Worth 2002, no pet.). 
        The relevant question is not whether there is any evidence to support a 
state-court conviction, but whether there is sufficient evidence to justify a 
rational trier of fact to find guilt beyond a reasonable doubt. Jackson v. 
Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979). In 
reviewing the legal sufficiency of the evidence under the criminal standard, we 
view all the evidence in the light most favorable to the judgment in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319; 
Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001). 
        This standard gives full play to the responsibility of the trier of fact to 
resolve conflicts in the testimony, to weigh the evidence, and to draw 
reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 
319, 99 S. Ct. at 2789. When performing a legal sufficiency review, we may 
not sit as a thirteenth juror, re-evaluating the weight and credibility of the 
evidence and, thus, substituting our judgment for that of the fact finder. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 
529 U.S. 1131 (2000). 
        In determining the legal sufficiency of the evidence, and faced with a 
record that supports conflicting inferences, we “must presume — even if it does 
not affirmatively appear in the record — that the trier of fact resolved any such 
conflict in favor of the prosecution, and must defer to that resolution.” Matson 
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The standard of 
review is the same for direct and circumstantial evidence cases. Burden, 55 
S.W.3d at 613; Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 
1999).
IV. Application of Law to the Facts
        A person commits the offense of indecency with a child if he engages in 
sexual contact with a child who is younger than seventeen years of age and 
who is not his spouse. Tex. Penal Code Ann. § 21.11(a)(1); Couchman v. 
State, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref’d). For 
purposes of section 21.11, 
“sexual contact” means the following acts, if committed with the
intent to arouse or gratify the sexual desire of any person:
 
(1) any touching by a person, including touching through 
clothing, of the anus, breast, or any part of the genitals of a child; 
or
 
(2) any touching of any part of the body of a child, including 
touching through clothing, with the anus, breast, or any part of the 
genitals of a person. 

Tex. Penal Code Ann. § 21.11(c). The specific intent to arouse or gratify the 
sexual desire of a person can be inferred from conduct, remarks, or all the 
surrounding circumstances. See McKenzie v. State, 617 S.W.2d 211, 216 
(Tex. Crim. App. [Panel Op.] 1981); Couchman, 3 S.W.3d at 163. An oral 
expression of intent is not required, and a defendant’s conduct alone is 
sufficient to infer intent. Couchman, 3 S.W.3d at 163. 
        Appellant hones in on the testimony from A.Y. and G.Y., in which they 
characterize Appellant as “trying to be funny,” and he argues that this evidence 
shows he did not have the requisite intent. In his brief, Appellant argues that 
while “[he] is probably guilty of assaulting [C.E. and A.Y.], . . . he is certainly 
not guilty of indecency with those two girls.” Here, as in Couchman, 
Appellant’s intent can be inferred from his conduct, words, and the surrounding 
circumstances. See id. Moreover, in applying the legal sufficiency standard of 
review, we must presume—even if it does not affirmatively appear in the 
record—that the juvenile court, as the trier of fact, resolved any conflicting 
inferences in favor of the prosecution, and we must defer to that resolution. 
Matson, 819 S.W.2d at 846. 
        The State presented evidence that Appellant repeatedly groped and 
touched C.E. and A.Y. Both C.E. and A.Y. stated that Appellant referred to 
them with sexually explicit language. The two girls also testified that Appellant 
threatened to hurt them if they told anyone about his conduct. This evidence 
supports an inference that Appellant touched C.E. and A.Y. with the requisite 
intent, i.e, that he touched them with the intent to arouse or sexually gratify 
himself. See Tex. Penal Code Ann. § 21.11(a)(1); Branson v. State, 825 
S.W.2d 162, 168 (Tex. App.—Dallas 1992, no pet.) (holding evidence 
sufficient to support conviction for indecency with child where defendant 
threatened victim not to tell anyone what had happened); Shane v. State, 685 
S.W.2d 89, 91 (Tex. App.—Beaumont 1984, no pet.) (holding evidence that 
defendant told victim not to tell anyone about abuse supported inference that 
defendant knew act was wrong and committed the abuse with the intent to 
arouse or gratify his sexual desire); see also Keele v. State, No. 04-02-00132-CR, 2003 WL 21076655, at *1 (Tex. App.—San Antonio May 14, 2003, pet. 
ref’d) (memo. op.) (not designated for publication) (holding requisite intent could 
be inferred from evidence of repeated sexual contact, threats to rape the victim 
if she told anyone, and defendant’s love letters to the victim); 
 

 Dease v. State, 
No. 01-02-00096-CR, 2003 WL 124817, at *3 (Tex. App.—Houston [1st Dist.]
Jan. 16, 2003, pet. ref’d) (memo. op.) (not designated for publication) (holding
evidence legally sufficient to establish requisite intent where, after defendant
touched victim, he told her not to tell anyone about it).
        We have reviewed the record extensively, and under the applicable 
standard of review, giving due deference to the fact finder’s determinations, we 
hold that the evidence is legally sufficient to support the juvenile court’s 
determination that Appellant engaged in delinquent conduct by committing the 
offense of indecency with a child against C.E. and A.Y. Accordingly, we 
overrule Appellant’s sole issue. 
V. Conclusion
        Having overruled Appellant’s sole issue, we affirm the trial court’s 
judgment.
                                                          PER CURIAM 
 
PANEL F:   GARDNER, J.; CAYCE, C.J.; and WALKER, J. 
 
DELIVERED: December 4, 2003