11th Court of Appeals
Eastland, Texas
Opinion
 
Lindy Odane Ashton
            Appellant
Vs.                  No. 11-03-00322-CR -- Appeal from Taylor County
State of Texas
            Appellee
 
            A jury convicted Lindy Odane Ashton of indecency with a child. Appellant pleaded true to
both enhancement allegations, and the State introduced additional evidence during the punishment
phase. The trial court assessed punishment at 35 years imprisonment.
            TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2003) provides that a person commits the
offense of indecency with a child by engaging in sexual contact with a child. TEX. PENAL CODE
ANN. § 21.11(c)(1) (Vernon 2003) defines “sexual contact” as any touching, including touching
through clothing, by a person of any part of the genitals of a child with the intent to arouse or gratify
the sexual desire of any person. 
Issues on Appeal
            In appellant’s first issue on appeal, he contends that the evidence was legally and factually
insufficient to prove that he intended to arouse or gratify a sexual desire. In appellant’s second issue
on appeal, he contends that his conviction was based upon the uncorroborated testimony of the child
victim and, therefore, that the conviction was fundamentally unfair and violated his right to due
process. We affirm.
Standards of Review
            In order to determine if the evidence is legally sufficient, we must review all of the evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000). In order to determine if the
evidence is factually sufficient, we must review all of the evidence in a neutral light and determine
whether the evidence supporting guilt is so weak that the verdict is clearly wrong and manifestly
unjust or whether the evidence contrary to the verdict is so strong that the beyond-a-reasonable-doubt
burden of proof could not have been met. Zuniga v. State, 144 S.W.3d 477 (Tex.Cr.App.2004); Ross
v. State, 133 S.W.3d 618 (Tex.Cr.App.2004); Vasquez v. State, 67 S.W.3d 229, 236 (Tex.Cr.
App.2002); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404
(Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). The jury is the judge of
the weight and credibility of the witnesses’ testimony, and due deference must be given to the jury’s
determination. TEX. CODE CRIM. PRO. ANN. arts. 36.13 & 38.04 (Vernon 1979 & 1981);
Johnson v. State, supra at 8-9.
The Testimony
            Melissa Massey, K.A.’s mother, was the first witness for the State. Melissa testified that she
lived with Landy Ashton and that K.A. was the oldest of their three daughters. K.A., the victim, was
six years old at the time of the offense and eight years old at the time of the trial. Melissa said that
Landy’s brother (appellant) and his wife Linda needed a place to stay. They moved in with Melissa
and Landy in June 2001. Appellant and Linda were given K.A.’s bedroom, and K.A. moved into
the playroom. Appellant and Linda separated in August or the first part of September, and Linda
took their baby to her mother’s home. Appellant remained but moved out during the first week in
October.
            Melissa said that she observed a change in K.A.’s attitude toward appellant before appellant
moved out in October. Toward the end of September and the first of October, K.A. told appellant
a few times that she did not like him. About three weeks after appellant moved out, Landy was put
in jail.
            Melissa called appellant for help one morning because there was no water coming into her
house. Appellant came over to help Melissa find the leak. After assisting Melissa, appellant asked
Melissa if he could move back in with Melissa and her daughters until he could earn enough to get
an apartment. When Melissa told K.A. and her sisters that appellant was going to stay with them
again, Melissa saw that they did not want appellant to move back in, but she did not know why.
            As the outcry witness, Melissa testified that, around the middle of November, appellant was
out of town and that K.A. said that she had something to tell Melissa. K.A. told her mother that
appellant had come into her room, pulled her panties down, and then touched her private area. K.A.
said that she woke up when appellant pulled her panties down. K.A. told her mother that she told
appellant to leave after he touched her. K.A. said that another time appellant stood in her doorway
naked and holding his penis while she was watching television. K.A. again told him to leave or she
was going to tell her mother. K.A. also told her mother about a third time when appellant came in,
sat down on the side of her bed, and again touched her private area. That time, appellant touched
her private area just above her panties. K.A. told her mother that she had not told Melissa before
because she had not wanted “to be in trouble.”
            The next morning, Melissa asked her sister to come over. K.A. then repeated what she had
told Melissa the night before. Melissa then called the police. They made a report, and K.A. talked
to the police officer.
            During cross-examination, Melissa was asked why she did not ask K.A. for a reason when
K.A. told appellant that she hated him and did not want appellant moving back to live with them. 
Melissa testified that she did ask K.A. but that K.A. would not tell her. K.A. only looked at
appellant at the time and said to him: “You know why.”
            K.A. was the only other witness for the State. K.A. testified that appellant did something
“nasty” to her three times. She said that she was wearing her nightgown with a Barbie decal on it
when appellant pulled her panties down and touched her vagina the first time. She acknowledged
that she called her vagina her “private” back then. K.A.’s testimony about the other two times was
similar to the testimony given by her mother, Melissa. Defense counsel thoroughly cross-examined
K.A., and K.A. remained consistent in her testimony. 
            The defense witnesses were Donald Osias Ashton, father of appellant; Laddy Ashton, the
older brother of Landy and appellant; Laddy’s wife; and Wanda Henning, the former wife of Donald
Ashton and the mother of Laddy, Landy, and appellant. Each testified that they were at a family
gathering after the three events supposedly occurred and that they saw no reluctance on K.A.’s part
to being around appellant. They also testified that K.A. lied on occasion, although they gave no
convincing examples. On cross-examination, Donald admitted that everyone drank alcohol during
the entire reunion and that he believed what happened to K.A. was “a family matter.” Also on cross-examination, Wanda admitted that she had gone to visit her son Landy (K.A.’s father) while he was
in jail in Breckenridge because she wanted Landy to testify for appellant and against K.A. Landy
did not testify. Wanda also admitted that she told Melissa that she was angry with her “because [she]
called the cops.”
Analysis
            The specific intent to arouse or gratify the sexual desire of a person as an element of the
offense of indecency with a child can be inferred from conduct, remarks, or all the surrounding
circumstances. Couchman v. State, 3 S.W.3d 155, 163 (Tex.App. - Fort Worth 1999, pet’n ref’d);
Nelson v. State, 893 S.W.2d 699, 705 (Tex.App. - El Paso 1995, no pet’n). An oral expression of
intent is not required, and a defendant’s conduct alone is sufficient to infer intent. Tyler v. State, 950
S.W.2d 787, 789 (Tex.App. - Fort Worth 1997, no pet’n). The jury could have inferred that
appellant had the specific intent by his “sexual contact” of K.A. on two separate occasions and by
his naked appearance in her doorway. 
            We hold that the evidence was legally and factually sufficient to prove that appellant intended
to arouse or gratify a sexual desire. Appellant’s first issue is overruled.
Appellant’s Second Issue
            In his second issue, appellant contends that his conviction for indecency with a child was
based upon the uncorroborated testimony of a child victim; therefore, the verdict was fundamentally
unfair and violated his right to due process. Appellant’s argument appears to be that the evidence
was legally insufficient because the verdict was based upon K.A.’s testimony.
             In Carmell v. Texas, 529 U.S. 513 (2000), the Supreme Court held that the Texas courts had
erred in allowing uncorroborated testimony by the child victim to support four of Carmell’s
convictions for sexual offenses. Effective September 1, 1993, TEX. CODE CRIM. PRO. ANN. art.
38.07 (Vernon Supp. 2004 - 2005) had been amended to allow the victim’s testimony alone to
support a conviction if the victim was under 18 years of age. Prior to that time, Article 38.07 had
provided that, if the victim was over 14 years of age, the victim’s testimony had to be corroborated
by other evidence or the victim had to have made an “outcry” within 6 months of the alleged offense. 
At the time of some of the offenses in Carmell, the child victim was over 14 years of age, and she
had not made a timely outcry.
 
            The Texas court of appeals had held that the convictions could be based upon the
uncorroborated testimony of the child victim because the court viewed Article 38.07 as a procedural
rule and, therefore, the amended version applied at the time of trial. The United States Supreme
Court reversed, holding that the pre-1993 version of Article 38.07 applied and that the Texas court’s
application of the amended Article 38.07 violated the ex post facto clause.
            The Supreme Court in Carmell reasoned that Article 38.07 is a sufficiency-of-the-evidence
rule. The Court stated that, under the pre-1993 version of Article 38.07, a victim’s testimony alone
was admissible but that it was insufficient for a conviction unless there was other corroboration
evidence or an outcry witness. Id. at 546-48. The current version of Article 38.07 provides that the
uncorroborated testimony of a victim is sufficient. The Carmell Court also pointed out that TEX.R.
EVID. 601(a) is a competency rule, as opposed to Article 38.07, and that Rule 601(a) recognizes that
a child can be a competent witness. In our case, K.A. was a competent witness, and Article 38.07
provides that her testimony alone would have been sufficient evidence. However, K.A. did make
an outcry to her mother, and her mother provided further testimony as an outcry witness. Appellant’s
second issue is overruled.
The Punishment Phase
            Appellant pleaded true to two enhancement allegations: a DWI and an attempted burglary
of a habitation. The State also introduced as a witness, B.A., the older half sister of K.A. B.A.
testified that her mother and Landy had separated and that, for a while, she had lived with Landy and
Melissa. B.A. testified that appellant had committed the same offense with her when she was 7 years
old that he later committed with K.A. B.A. said that her father, Landy, pulled appellant off of her
and threw appellant out but that nothing else was done. B.A. later left to live with her mother. 
Appellant’s wife also testified against him. She stated that, while appellant was in the county jail
prior to this trial and she was pregnant, he wrote her and described his sexual fantasies involving
their unborn daughter. The trial court assessed punishment at 35 years confinement in the Insti-tutional Division of the Texas Department of Criminal Justice.
 
 
 
This Court’s Ruling
            The judgment of the trial court is affirmed.
 
                                                                                    TERRY McCALL
                                                                                    JUSTICE
 
March 17, 2005
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.