COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-007-CR

JERAMIE HOWARD APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Jeramie Howard challenges the legal and factual sufficiency of the evidence to support his conviction for aggravated assault.  We affirm.

BACKGROUND

The complainant, 
Janet, suffered head trauma after being struck with a flashlight.  Her throat was slashed to the trachea.  Her pinkie finger was cut all the way to the bone and part of her ear was cut off.

Brad, one of Janet
’
s sons, was in jail on drug charges, and Janet had been selling some of Brad
’
s things to raise money for bail.  Appellant was Brad
’
s friend.  There was uncontested evidence that on October 5, 2004, Appellant contacted Janet about buying Brad
’
s PlayStation.  Janet testified that Appellant came by her trailer to see the PlayStation and that he told her that he needed to cash a check and left to do so.  Appellant testified that he called Janet after his drug counseling class ended, around 10 p.m., and asked if he could come by and get the PlayStation, but that he never made it there because of car trouble.

Shannon, Janet
’
s other son, testified that Janet called him to come home and get the PlayStation and some other items ready for Appellant.  Shannon went to Janet
’
s trailer, followed by Janet
’
s nephew, Sam, and Sam
’
s girlfriend, Valerie, who each gave similar testimony about the night
’
s events.  Some time after 10 p.m., Janet received a phone call from Appellant, asking her to send him some help at "the check-cashing place" at 28th Street and Main Street because he was having car trouble.  Shannon testified that he, Sam, and Valerie left Janet "to go give [Appellant] a boost."  They stopped at a 7-11 store when they could not locate Appellant, and called Janet, who did not answer the phone.  Shannon, Sam, and Valerie returned to Janet
’
s trailer and found her face down in a puddle of blood.  The PlayStation was missing.

Appellant testified that after he called Janet for help, "a Spanish fellow in a pickup pulled up, and he saw my hood open and he offered to give me a boost."  Appellant testified that after his car started, he decided to return home to Weatherford, called Janet
’
s phone number, and left her a message that he would not be coming.
(footnote: 2)
 Detective James Desmarais, the lead investigator, took statements from Shannon, Sam, and Valerie.  Two latent fingerprints, an envelope with bloodstains, foot and shoe impressions, and a portion of a wall containing two bloody hand prints
(footnote: 3) were recovered from the crime scene.  Detective Desmarais testified that none of this evidence tied Appellant to the crime.  He also testified that during the course of the investigation, he had officers go to several locations looking for Appellant and Appellant
’
s vehicle in an undercover capacity but could not locate it.  He testified that had they been able to locate the vehicle, they would have searched it for blood residue.  Appellant
’
s stepfather testified that Appellant
’
s vehicle had been parked at their home in Weatherford since October 2004.

Janet initially did not remember who assaulted her.  In January 2005, about three months after the attack, she called Detective Desmarais and told him that she "was remembering."  Detective Desmarais showed her a photo lineup that he had prepared based on witness information.  Janet identified Appellant in the lineup and at trial.  Appellant testified that he did not attack Janet or steal the PlayStation.

Appellant was charged with aggravated robbery and pled not guilty.  The jury found Appellant guilty of aggravated assault, a lesser included offense,
(footnote: 4) and sentenced him to twenty years
’
 confinement.

SUFFICIENCY OF THE EVIDENCE 

Appellant challenges both the legal and factual sufficiency of the evidence to support his conviction, asserting that he was wrongfully identified, that 
Janet was prompted by the investigator to identify him, and that her identification of him as the perpetrator conflicts with the forensic evidence.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 
Tex. Code Crim. Proc. Ann
. art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder
’
s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder
’
s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction."  
Id
.  We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury
’
s resolution of a conflict in the evidence.  
Id
.  We may not simply substitute our judgment for the fact-finder
’
s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury
’
s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered."  
Johnson
, 23 S.W.3d at 8.  Thus, we must give due deference to the fact-finder
’
s determinations, "particularly those determinations concerning the weight and credibility of the evidence."  
Id
. at 9.

The identity of a perpetrator may be proven by either direct or circumstantial evidence.  
Earls v. State
, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); 
Couchman v. State
, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref
’
d).  At trial, Janet identified Appellant as her assailant, and had previously identified him in a photo lineup.  She had seen Appellant several times before, through his association with her son, Brad.  She testified that after she regained consciousness from the initial blow to her head, she "turned to look out of the corner of [her] eye and [saw Appellant] gritting his teeth and calling [her] names."  Janet testified that he then pulled her up by her head with his left hand, and that she looked straight into Appellant
’
s eyes.  She testified that he had something shiny in his right hand and identified it as a knife.

Dr. Garza, who treated Janet immediately after the assault, testified that the type of injuries that Janet suffered sometimes caused memory loss, but that it was possible for the injured person to regain her memory.  Janet testified that when she was in the hospital, she lacked memory of the assault, but that her memory returned and she "called the detective . . . and told him that [she] was remembering."  Detective Desmarais testified that he prepared the photo lineup before Janet
’
s arrival, based on witness information, and that he did not show it to her until he had a verbal interview with her.  Detective Desmarais testified that the police could not locate Appellant
’
s vehicle, but Appellant
’
s stepfather testified that the vehicle had been parked at their house in Weatherford since October 2004 and had a history of overheating and stopping.  Appellant
’
s stepfather also submitted photos of the vehicle
’
s interior and testified that the vehicle had not been cleaned since October 2004.

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have found that Appellant was Janet
’
s assailant, based on her familiarity with his identity beforehand, her memory of that night, her identification of him at the photo lineup, and her identification of him at trial, as well as Dr. Garza
’
s testimony about memory recovery and other witnesses
’
 testimonies about the night of the assault.  The jury could have reasonably chosen to believe Janet
’
s identification, and Shannon, Valerie, and Sam
’
s versions of events over Appellant
’
s, and Detective Desmarais
’
s testimony about searching for Appellant
’
s vehicle over that of Appellant
’
s step-father.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Margraves
, 34 S.W.3d at 919.  Thus, resolving any inconsistencies in the evidence in favor of the verdict, we hold that there was legally sufficient evidence for the jury to conclude that Appellant committed the aggravated assault and to convict him.  
See Curry
, 30 S.W.3d at 406; 
Dewberry
, 4 S.W.3d at 740.  We overrule Appellant
’
s first point.

After a comprehensive review of the evidence, viewed neutrally, we cannot conclude that the jury
’
s conclusion that Appellant committed the aggravated assault was clearly wrong or manifestly unjust.  
Watson
, 204 S.W.3d at 417.  Although Detective Desmarais testified that none of the physical evidence recovered from the crime scene tied Appellant to the aggravated assault, the jury resolved contradictory testimonial evidence against Appellant.  Giving due deference to the jury
’
s determination of the evidence
’
s weight and credibility, we hold that there was factually sufficient evidence for the jury to conclude that Appellant was the perpetrator of the aggravated assault. 
 Johnson
, 23 S.W.3d at 8-9.  Accordingly, we overrule Appellant
’
s second point.

CONCLUSION

Having overruled Appellant
’
s points, we affirm the trial court
’
s judgment.

PER CURIAM

PANEL F:  HOLMAN, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
  February 1, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Shannon testified that there was a message from Appellant, saying that he did not need help anymore and that he had fixed his car.  Appellant
’
s cell phone records were admitted into evidence.

3:
Shannon testified that one of the bloody hand prints was his, from holding his mother who was bleeding profusely and then touching the wall. Detective Desmarais testified that the bloody hand prints were inconclusive and that he did not know who they belonged to.

4:
A person commits aggravated assault if he commits an assault, causing serious bodily injury to another.  
Tex. Penal Code Ann
. § 22.02(a)(1) (Vernon Supp. 2006).  Section 22.01 defines assault as intentionally, knowingly, or recklessly causing bodily injury to another.  
Id
. § 22.01(a).