COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-007-CR

 

 

JERAMIE HOWARD                                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

 

                                              ------------

 

Appellant Jeramie Howard
challenges the legal and factual sufficiency of the evidence to support his
conviction for aggravated assault.  We
affirm.

 

 








BACKGROUND

The complainant, Janet, suffered
head trauma after being struck with a flashlight.  Her throat was slashed to the trachea.  Her pinkie finger was cut all the way to the
bone and part of her ear was cut off.

Brad, one of Janet=s sons, was in
jail on drug charges, and Janet had been selling some of Brad=s things to raise
money for bail.  Appellant was Brad=s friend.  There was uncontested evidence that on
October 5, 2004, Appellant contacted Janet about buying Brad=s
PlayStation.  Janet testified that
Appellant came by her trailer to see the PlayStation and that he told her that
he needed to cash a check and left to do so. 
Appellant testified that he called Janet after his drug counseling class
ended, around 10 p.m., and asked if he could come by and get the PlayStation,
but that he never made it there because of car trouble.








Shannon, Janet=s other son,
testified that Janet called him to come home and get the PlayStation and some
other items ready for Appellant.  Shannon
went to Janet=s trailer, followed by Janet=s nephew, Sam, and
Sam=s girlfriend,
Valerie, who each gave similar testimony about the night=s events.  Some time after 10 p.m., Janet received a
phone call from Appellant, asking her to send him some help at "the
check-cashing place" at 28th Street and Main Street because he was having
car trouble.  Shannon testified that he,
Sam, and Valerie left Janet "to go give [Appellant] a boost."  They stopped at a 7‑11 store when they
could not locate Appellant, and called Janet, who did not answer the
phone.  Shannon, Sam, and Valerie
returned to Janet=s trailer and found her face down in a
puddle of blood.  The PlayStation was
missing.

Appellant testified that after he called Janet for help,
"a Spanish fellow in a pickup pulled up, and he saw my hood open and he
offered to give me a boost." 
Appellant testified that after his car started, he decided to return home
to Weatherford, called Janet=s phone number,
and left her a message that he would not be coming.[2]








Detective James Desmarais, the lead investigator, took
statements from Shannon, Sam, and Valerie. 
Two latent fingerprints, an envelope with bloodstains, foot and shoe
impressions, and a portion of a wall containing two bloody hand prints[3]
were recovered from the crime scene. 
Detective Desmarais testified that none of this evidence tied Appellant
to the crime.  He also testified that
during the course of the investigation, he had officers go to several locations
looking for Appellant and Appellant=s vehicle in an
undercover capacity but could not locate it. 
He testified that had they been able to locate the vehicle, they would
have searched it for blood residue. 
Appellant=s stepfather testified that Appellant=s vehicle had been
parked at their home in Weatherford since October 2004.

Janet initially did not remember who assaulted her.  In January 2005, about three months after the
attack, she called Detective Desmarais and told him that she "was
remembering."  Detective Desmarais
showed her a photo lineup that he had prepared based on witness
information.  Janet identified Appellant
in the lineup and at trial.  Appellant
testified that he did not attack Janet or steal the PlayStation.

Appellant was charged with aggravated robbery and pled not
guilty.  The jury found Appellant guilty
of aggravated assault, a lesser included offense,[4]
and sentenced him to twenty years= confinement.

 

 

 








SUFFICIENCY OF THE EVIDENCE 

Appellant challenges both the legal and factual sufficiency
of the evidence to support his conviction, asserting that he was wrongfully
identified, that Janet was prompted by the investigator to identify him, and
that her identification of him as the perpetrator conflicts with the forensic
evidence.








In reviewing the legal sufficiency of the evidence to
support a conviction, we view all the evidence in the light most favorable to
the verdict in order to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d 691, 693
(Tex. Crim. App. 2005).  This standard
gives full play to the responsibility of the trier of fact to resolve conflicts
in the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  The
trier of fact is the sole judge of the weight and credibility of the
evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Thus, when performing a legal
sufficiency review, we may not re‑evaluate the weight and credibility of
the evidence and substitute our judgment for that of the fact‑finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

When reviewing the factual sufficiency of the evidence to
support a conviction, we view all the evidence in a neutral light, favoring
neither party.  Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d
795, 799 (Tex. Crim. App. 2005).  We then
ask whether the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the fact‑finder=s determination is
clearly wrong and manifestly unjust or whether conflicting evidence so greatly
outweighs the evidence supporting the conviction that the fact‑finder=s determination is
manifestly unjust.  Watson, 204
S.W.3d at 414‑15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000).  To reverse under the
second ground, we must determine, with some objective basis in the record, that
the great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court "harbor a subjective
level of reasonable doubt to overturn [the] conviction."  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a
conflict in the evidence.  Id.  We may not simply substitute our judgment for
the fact‑finder=s.  Johnson,
23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).  Unless the record clearly reveals
that a different result is appropriate, we must defer to the jury=s determination of
the weight to be given contradictory testimonial evidence because resolution of
the conflict "often turns on an evaluation of credibility and demeanor,
and those jurors were in attendance when the testimony was
delivered."  Johnson, 23
S.W.3d at 8.  Thus, we must give due
deference to the fact‑finder=s determinations,
"particularly those determinations concerning the weight and credibility
of the evidence."  Id. at 9.








The identity of a perpetrator may be proven by either
direct or circumstantial evidence.  Earls
v. State, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); Couchman v. State,
3 S.W.3d 155, 162 (Tex. App.CFort Worth 1999,
pet. ref=d).  At trial, Janet identified Appellant as her
assailant, and had previously identified him in a photo lineup.  She had seen Appellant several times before,
through his association with her son, Brad. 
She testified that after she regained consciousness from the initial
blow to her head, she "turned to look out of the corner of [her] eye and
[saw Appellant] gritting his teeth and calling [her] names."  Janet testified that he then pulled her up by
her head with his left hand, and that she looked straight into Appellant=s eyes.  She testified that he had something shiny in
his right hand and identified it as a knife.

Dr. Garza, who treated Janet immediately after the assault,
testified that the type of injuries that Janet suffered sometimes caused memory
loss, but that it was possible for the injured person to regain her memory.  Janet testified that when she was in the
hospital, she lacked memory of the assault, but that her memory returned and
she "called the detective . . . and told him that [she] was
remembering."  Detective Desmarais
testified that he prepared the photo lineup before Janet=s arrival, based
on witness information, and that he did not show it to her until he had a
verbal interview with her.  Detective
Desmarais testified that the police could not locate Appellant=s vehicle, but
Appellant=s stepfather testified that the vehicle
had been parked at their house in Weatherford since October 2004 and had a
history of overheating and stopping. 
Appellant=s stepfather also submitted photos of the
vehicle=s interior and
testified that the vehicle had not been cleaned since October 2004.








Viewing the evidence in the light most favorable to the
verdict, we conclude that the jury could have found that Appellant was Janet=s assailant, based
on her familiarity with his identity beforehand, her memory of that night, her
identification of him at the photo lineup, and her identification of him at
trial, as well as Dr. Garza=s testimony about
memory recovery and other witnesses= testimonies about
the night of the assault.  The jury could
have reasonably chosen to believe Janet=s identification,
and Shannon, Valerie, and Sam=s versions of
events over Appellant=s, and Detective Desmarais=s testimony about
searching for Appellant=s vehicle over that of Appellant=s
step-father.  See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Margraves, 34 S.W.3d at 919.  Thus, resolving any inconsistencies in the
evidence in favor of the verdict, we hold that there was legally sufficient
evidence for the jury to conclude that Appellant committed the aggravated
assault and to convict him.  See Curry,
30 S.W.3d at 406; Dewberry, 4 S.W.3d at 740.  We overrule Appellant=s first point.








After a comprehensive review of the evidence, viewed
neutrally, we cannot conclude that the jury=s conclusion that
Appellant committed the aggravated assault was clearly wrong or manifestly
unjust.  Watson, 204 S.W.3d at
417.  Although Detective Desmarais
testified that none of the physical evidence recovered from the crime scene
tied Appellant to the aggravated assault, the jury resolved contradictory
testimonial evidence against Appellant. 
Giving due deference to the jury=s determination of
the evidence=s weight and credibility, we hold that
there was factually sufficient evidence for the jury to conclude that Appellant
was the perpetrator of the aggravated assault.  Johnson, 23 S.W.3d at 8-9.  Accordingly, we overrule Appellant=s second point.

CONCLUSION

Having overruled Appellant=s points, we
affirm the trial court=s judgment.

 

PER CURIAM

 

PANEL
F:  HOLMAN, LIVINGSTON, and DAUPHINOT,
JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:  February 1, 2007











[1]See Tex.
R. App. P. 47.4.





[2]Shannon testified that there was a
message from Appellant, saying that he did not need help anymore and that he
had fixed his car.  Appellant=s cell phone records were admitted
into evidence.





[3]Shannon testified that one of the
bloody hand prints was his, from holding his mother who was bleeding profusely
and then touching the wall. Detective Desmarais testified that the bloody hand
prints were inconclusive and that he did not know who they belonged to.





[4]A person commits aggravated assault
if he commits an assault, causing serious bodily injury to another.  Tex.
Penal Code Ann. ' 22.02(a)(1) (Vernon Supp.
2006).  Section 22.01 defines assault as
intentionally, knowingly, or recklessly causing bodily injury to another.  Id. ' 22.01(a).