COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS. 2-06-341-CR 

        2-06-342-CR 

        2-06-343-CR 

       2-06-344-CR

DONALD LEE BRYANT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Donald Lee Bryant appeals from his convictions for indecency with a child and aggravated sexual assault of a child.  We affirm.

In his first point, appellant challenges the sufficiency of the evidence to establish venue, i.e., that he committed the crimes in Tarrant County, as alleged in the indictments.

The State must prove venue by a preponderance of the evidence.
(footnote: 2)  Venue may be proven by either direct or circumstantial evidence,
(footnote: 3) and the jury may make reasonable inferences from the evidence to decide the venue issue.
(footnote: 4) The evidence is sufficient if the jury may reasonably conclude therefrom that the offense was committed in the county alleged.
(footnote: 5)
 In this case, all four of the complainants testified that the charged offenses occurred in appellant’s home during the same time period.  Two of the complainants did not know where appellant’s home was located.  A third complainant testified that appellant’s home was in Fort Worth; however, she did not know whether it was in Tarrant County.
(footnote: 6)  The fourth complainant, P.W., testified that the home was in Fort Worth.  When asked, “Do you know if that’s also in Tarrant County, Texas,” she replied, “Yes.”

We hold that P.W.’s testimony is sufficient to establish by a preponderance of the evidence that the charged offenses occurred in Tarrant County.
(footnote: 7)  Appellant argues that the testimony shows only that P.W. knew “if” or “whether” appellant lived in Tarrant County, not that appellant actually lived there.  The jury reasonably could have inferred, however, that P.W. meant that appellant lived in both Fort Worth and Tarrant County.  For these reasons, we overrule appellant’s first point.

In his second point, appellant complains that the trial court improperly denied his motion for a mistrial during the punishment phase of trial.  Appellant contends that his motion for mistrial was in essence a motion for a new trial on guilt-innocence based on newly discovered evidence.

A trial court’s denial of a motion for mistrial or a motion for new trial based on newly discovered evidence will not be reversed absent an abuse of discretion.
(footnote: 8)  The trial court does not abuse its discretion by denying a motion for new trial based on newly discovered evidence unless, among other things, the new evidence is probably true and will probably bring about a different result on retrial.
(footnote: 9)
 In this case, appellant took the stand during the punishment phase of trial and testified that he had become a born-again Christian after the alleged offenses had occurred.  Appellant asked the jury to place him on community supervision and stated that he would agree to wear a leg monitor.  Later, after the close of the evidence on punishment, appellant moved for a mistrial and a new trial on guilt-innocence based on a remark that had allegedly just been overheard in the ladies’ restroom.  The trial court denied the motion for mistrial but allowed the defense to reopen the evidence, and several witnesses testified before the jury regarding the alleged newly discovered evidence. 

When the evidence was reopened, Nelda Probst, a defense witness with whom appellant was living at the time of trial, testified that she had overheard Charlotte Grady say to her sister, Caroline White, “Born-again Christian my ass. . . .  If he was a Born-again Christian he would have given up the house and we wouldn’t be going through this.”

A defensive theory during the guilt-innocence phase of trial had been that the accusations against appellant were false and motivated by a desire to send him to prison so that his house, in which he held a life estate following the death of his second wife, could be sold.  Appellant’s second wife was the grandmother of Grady and White.  Two of the complainants, S.G. and P.W., were Grady’s and White’s daughters, respectively. 

Probst testified that she believed Grady’s comment showed that she and White had “brainwashed” S.G. and P.W. into believing that they had been molested by appellant so that they would testify against him.  Probst believed this was a plot to get appellant out of the house so that Grady, White, and their children could benefit financially when the house was sold.
(footnote: 10)
 Grady also testified and admitted saying to White, “If he was a Born-again Christian, my ass[,] he would have already turned over the house.”  But Grady denied saying that “we wouldn’t be here in court on these cases” if appellant had just let go of the house.  Instead, Grady and White explained that their grandmother’s will provided that appellant was allowed to keep the house as long as he lived there, but that if appellant vacated the house he was supposed to turn it over to the family so that it could be sold.  Grady testified that the family “did not have any kind of problem” with appellant’s keeping the house until after he had moved out of it.
(footnote: 11)  At that point, according to Grady, the family asked for the keys back, but appellant refused to return them.  Grady believed that this was a violation of her grandmother’s will and that appellant was doing it just to torment the family.  Grady opined, “That’s not a Christian way to act.” 

Grady and White both acknowledged that they and their families would benefit if the house were sold.  But Grady denied convincing S.G. and P.W. to accuse appellant falsely so that they could get the house away from him. Instead, Grady and White testified that they believed their daughters’ allegations against appellant.  The two women further testified that they had not known A.B. and S.B., the other two complainants, before trial and that these girls and their families had nothing to gain financially by testifying against appellant.
(footnote: 12)
 Having carefully considered the newly discovered evidence, we hold that the trial court did not abuse its discretion by concluding that the evidence probably would not bring about a different result on retrial.  Indeed, even after hearing the newly discovered evidence, the jury did not recommend that appellant receive community supervision, as he had requested.  Instead, the jury assessed his punishment at twenty-five years in prison for the aggravated sexual assault offense and ten or fifteen years in prison for each of the indecency offenses.
(footnote: 13)  If the jury had doubted appellant’s guilt after hearing the newly discovered evidence, it would not have assessed prison time.

For these reasons, we hold that the trial court properly denied appellant’s motion for mistrial/new trial.  We overrule appellant’s second point and affirm the trial court’s judgments.

PER CURIAM

PANEL F:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DO NOT PUBLISH 

Tex. R. App. P.
 47.2(b)

DELIVERED:  November 29, 2007 
 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Tex. Code Crim. Proc. Ann.
 art. 13.17 (Vernon 2005).

3:
Black v. State,
 645 S.W.2d 789, 790 (Tex. Crim. App. 1983).

4:
Couchman v. State,
 3 S.W.3d 155, 161 (Tex. App.—Fort Worth 1999, pet. ref’d).

5:
Rippee v. State,
 384 S.W.2d 717, 718 (Tex. Crim. App. 1964); 
Knabe v. State,
 836 S.W.2d 837, 839 (Tex. App.—Fort Worth 1992, pet. ref’d).

6:
We have, at appellant’s request, taken judicial notice of the fact that, at the time of the alleged offenses, the city limits of Fort Worth included both Tarrant and Denton Counties.

7:
Appellant did not request a limiting instruction regarding P.W.’s testimony; therefore, it was admissible for all purposes.  
Tex. R. Evid.
 105(a); 
Hammock v. State,
 46 S.W.3d 889, 895 (Tex. Crim. App. 2001).

8:
Keeter v. State,
 74 S.W.3d 31, 37 (Tex. Crim. App. 2002) (motion for new trial); 
cf. Hawkins v. State,
 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (motion for mistrial based on alleged improper jury argument).

9:
Keeter,
 74 S.W.3d at 37.  Similarly, in determining whether the trial court properly denied a motion for mistrial, we consider the prejudicial effect of the misconduct, curative measures, and the certainty of conviction absent the misconduct.  
Hawkins,
 135 S.W.3d at 77.

10:
Appellant had previously testified at punishment that he believed Grady had convinced all four of the complainants and their families to falsely accuse him of committing the alleged offenses. 

11:
White testified similarly. 

12:
Appellant was A.B. and S.B.’s biological grandfather—their father’s father. S.G. and P.W., on the other hand, were the great-grand-daughters of appellant’s second wife but were not related to appellant biologically.

13:
The punishment ranges for these offenses were 5 to 99 years and 2 to 20 years, respectively.  Therefore, the jury could have chosen to recommend community supervision for these offenses.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 42.12, § 4 (Vernon Supp. 2007).  Effective September 1, 2007, a defendant cannot receive community supervision if he is convicted of indecency with a child or aggravated sexual assault of a child and the child was under fourteen years of age when the offense was committed.  
Id.
 art. 42.12, § 4(d)(5).  This provision does not apply to appellant’s cases, however, because he was convicted and his punishment was assessed in September 2006.